# AGREEMENT REGARDING COMPETITION AND PROTECTION OF PROPRIETARY INTERESTS

I understand that I am or will be employed by OH.IO Ventures Holding, Inc. or one of its affiliated entities (the "Company"). During my employment, I will have access to the Company's confidential information and key business relationships. Moreover, in exchange for signing this Agreement regarding Competition and Protection of Proprietary Interests (the "Agreement"), I will receive employment with the Company. I agree, therefore, that the following restrictions are reasonable and necessary to protect the Company's interests. I further acknowledge that I have been provided 14 days to review this Agreement, and the Company has instructed me to consult with an attorney before signing this Agreement.

1.      **Protection of Confidential Information**.

a.      **Definition of Confidential Information.** The term "Confidential Information" means confidential and proprietary information of the Company (including its subsidiaries, parents, affiliates, successors and assigns), whether in written, oral, electronic or other form, including but not limited to, information and facts concerning business plans, marketing plans, strategies, forecasts, customers, future customers, suppliers, licensors, licensees, partners, investors, affiliates or others, training methods and materials, financial information, pricing models and methods, sales prospects, client and partner lists, inventions, tests, test results, product assessments, improvements, products, designs, methods, show-how and know-how, techniques, systems, processes, software programs, algorithms, formulae, works of authorship, code, technical data and specifications, or any other technical or trade secrets of the Company or of any third party provided to me or the Company; provided that, Confidential Information will not include information that is in the public domain other than through any fault or act by me.

b.      **Nondisclosure and Prohibition against Misuse.** During my employment, I will not use or disclose any Confidential Information, without the Company's prior written permission, for any purpose other than performance of my duties for the Company or by court order.

c.      **Non-Disclosure and Return of Property Upon Termination.** After termination of my employment, I will not use or disclose any Confidential Information for any purpose. Immediately upon my termination, I will return to the Company all tangible Confidential Information and copies thereof (regardless how such Confidential Information or copies are maintained), and I will deliver to the Company any property of the Company which may be in my possession, including, but not limited to, notes, notebooks, memoranda, reports, lists, records, specifications, software programs, data, graphics, computers, equipment, models, tools, cellular telephones, PDAs, pagers, credit and/or calling cards, keys, access cards, documentation or other materials of any nature and in any form, whether written, printed, electronic or in digital format or otherwise, relating to any matter within the scope of the business of the Company or concerning any of its dealings or affairs and any other Company property in my possession, custody or control (whether prepared by myself or others). If any Confidential Information has been saved or transferred to any device not owned by the Company, I will immediately notify the Company, and make such device available to the Company so that it may remove any Confidential Information from the device.

**EXHIBIT D**

**2.** **Protection Of Company Interests.**

a. **Definitions.**

(1) "Competing Products" means products or services sold by the Company, or any prospective product or service the Company took steps to develop, and for which I had any responsibility during the 24 months preceding the termination of my employment;

(2) "Restricted Territory" means the geographic territory over which I had responsibility during the 24 months preceding the termination of my employment.

**b.** **Non-Competition.** During my employment and for 12 months after termination of my employment, I will not directly or indirectly, on behalf of myself or in conjunction with any other person or entity:

(1) Own, invest in, or provide financing to any business (other than less than 1% ownership) that sells Competing Products in the Restricted Territory;

(2) work in the Restricted Territory for any person or entity that sells Competing Products, in any role: (i) that is similar to any position I held with the Company during the 24 months preceding the termination of my employment, (ii) or that may cause me to inevitably rely upon or disclose the Company's Confidential Information.

**c.** **Non-Solicitation Of Customers & Employees.** During my employment and for 12 months after termination of my employment, I will not directly or indirectly, on behalf of myself or in conjunction with any other person or entity:

(1) solicit or approach, divert or appropriate or attempt to solicit, divert or appropriate any customer, customer prospect, client, business partner, or strategic partner of the Company (or any person or entity which was a customer, client, or business partner of the Company at any time during the 6 month period preceding such actual or attempted solicitation, diversion or appropriation), or any prospective customer, customer prospect, client, or business partner with respect to which the Company has developed or made a sales presentation (or similar offering of services) during the 6 month period preceding such actual or attempted solicitation, for the purpose of competing with the Company or reducing the Company's relationship with any customers, clients, or other business partners of the Company;

(2) solicit, entice or persuade or attempt to solicit, entice or persuade any employee of or consultant to the Company to end or reduce such person's relationship with the Company, or employ, hire, cause to be employed or engaged, or solicit the employment or the engagement as a consultant of any employee of or consultant to the Company while any such person is

Docusign Envelope ID: E72568DF-D641-4780-A0B6-3C7BA75A4348

affiliated with the Company or within 6 months after any such person ceases to be affiliated with the Company;

(3) solicit, entice or persuade or attempt to solicit, entice or persuade any third party with whom the Company has a contractual or business relationship (including business referral sources, centers of business influence, and/or strategic business partners) to sever, modify, reduce, or in any way alter their business or contractual relationship with the Company.

For purposes of this section, "solicit" means:

(i) Any comments, conduct or activity that would influence a customer's decision to continue doing business with the Company, regardless of who initiates contact;

(ii) Any comments, conduct or activity that would influence an employee's or independent contractor's decision to resign employment or engagement with the Company or accept employment or engagement with any new company, regardless of who initiates contact.

**d. Limitations On Working For Customers & Vendors.** During my employment, and for 12 months after termination of my employment, I will not work for any of the Company's customers or vendors in any role in which I might inevitably rely upon or disclose Confidential Information with the Company's prior written approval.

**e. Duty of Loyalty.** During my employment I will act in good faith and in a manner that I reasonably believe to be in the best interests of the Company in carrying out my responsibilities. Nothing in this Agreement shall restrict or prevent the employee from engaging in other business activities, providing advisory or consulting services, or making investments of any kind, whether individually or with others, regardless of whether such activities are competitive with the Company, provided that such activities do not materially interfere with the performance of his/her obligations to the Company.

**f. State-Specific Addendum.** For employees residing in the state(s) in Exhibit 1, the provisions in Paragraph 2 will be subject to state-specific law(s) as set forth in Exhibit 1 and as otherwise required by applicable law, which are incorporated into this Agreement.

**3. Non-Disparagement.** I agree that during my employment, and after my employment with the Company ends for any reason, I will not make any false or disparaging statement(s) about the Company or its business or employees to other employees, customers, vendors or any other third party. The Company agrees that during my employment and after my employment, the Company will not make any false statements about me.

**4. Limitations On Confidentiality and Non-Disparagement.** I understand that the foregoing confidentiality and non-disparagement provisions do not prohibit me or the Company from providing truthful information in good faith to any federal or state governmental agency, entity or official investigating an alleged violation of federal or state law or regulation or when making other disclosures that are protected under the provisions of federal or state law. I

Docusign Envelope ID: E72568DF-D641-4780-A0B6-3C7BA75A4348

understand that neither I nor the Company will be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

6. **Certifications.** By executing this Agreement, I certify that I: (a) have not and will not use or disclose to the Company any confidential information and/or trade secrets belonging to others, including my prior employers; (b) will not use any prior inventions made by me and which the Company is not legally entitled to learn of or use; and (c) am not subject to any prior agreements that would prevent me from fully performing my duties for the Company.

7. **Protection Of Proprietary Rights.**

a. I agree that all Work Product (defined below) and Intellectual Property Rights (defined below) will be the sole and exclusive property of the Company. "**Work Product**" means all writings, inventions, discoveries, ideas and other work product of any nature whatsoever that relates to the business, and/or actual or anticipated research or development of the Company and that I create on my own or in collaboration with others (i) during my employment with the Company or (ii) within 6 months of termination of my employment with the Company if conceived as a result of work done during my employment. "**Intellectual Property Rights**" means all rights in and to copyrights, trade secrets, trademarks (and related goodwill), patents and other intellectual property rights arising out of the Work Product, in any jurisdiction throughout the world, and all related rights of priority under international conventions. I will promptly and fully disclose to the Company any and all Work Product made or conceived or reduced to practice, either alone or jointly with others, during the term of my employment. I acknowledge that nothing in this paragraph will be interpreted as allowing me to use or disclose Confidential Information in violation of Paragraph 1.

b. I acknowledge that, by reason of being employed by the Company, all of the Work Product is, to the extent permitted by law, "work made for hire" and is the property of the Company. To the extent that any Work Product is not "work made for hire," I hereby irrevocably assign to the Company, for no additional consideration, my entire right, title and interest in and to all Work Product and Intellectual Property Rights therein. I agree to execute any further documents that the Company may request to evidence, establish, maintain, or protect its rights in and ownership of the Work Product.

c. During and after my employment, I agree to provide reasonable cooperation and assistance to the Company with respect to (i) applying for, obtaining, perfecting and/or transferring to the Company the Work Product and any Intellectual Property Rights in the Work Product in any jurisdiction in the world; and (ii) the Company's actions in maintaining, protecting and/or enforcing such Intellectual Property Rights. I hereby irrevocably grant the Company power of attorney to execute and deliver any such documents on my behalf and in my name and to do all other lawfully permitted acts to transfer the Work Product to the Company and further the transfer, issuance, prosecution and maintenance of all Intellectual Property Rights therein, to the full extent permitted by law, in the event that I do not promptly cooperate with the

Company's request.  The power of attorney is coupled with an interest and will not be affected by my subsequent incapacity.

**8.**     **Injunctive Relief and Attorney's Fees.**  I agree that in the event I breach this Agreement, the Company will be irreparably harmed and entitled to an injunction restraining any further breach, in addition to any other rights to which it is entitled.

**9.**     **Modification & Severability.**  If any portion of this Agreement will be held unenforceable, the parties agree that a court of competent jurisdiction may modify the Agreement (by adding or removing language) or sever unenforceable provisions in order to render this Agreement enforceable to the fullest extent permitted by law.

**10.**     **At-Will Employment Status.**  I acknowledge and agree that nothing in this Agreement alters my status as an employee at will.

**11.**     **Assignment.**  This Agreement is personal to me and I may not assign it.  The Company may assign it to any assign, or a successor to all or substantially all of the business or assets of the Company, and no further consent from me is necessary.

**12.**     **Change of Position.**  If the Company changes my position or title with the Company, or transfers me from one affiliate to another, this Agreement and my obligations hereunder will remain in force.

**13.**     **Protections For Affiliates and Subsidiaries.**  This Agreement is intended to benefit all Company subsidiaries and affiliates for which I perform services, for which I have customer contact or about which I receive Confidential Information.  Therefore, any Company subsidiary or affiliate that may be adversely affected by a breach may enforce this Agreement regardless of which entity actually employs me at the time.

**14.**     **Entire Agreement.**  This Agreement and the documents referred to in it constitute the entire agreement between the Company and me concerning the subject matter herein; provided, however, that any award or agreement that I have with the Company under any long-term incentive plan may provide remedies in addition to any remedies available under this Agreement. Neither I nor the Company may amend this Agreement without the written consent of the other.

**15.**     **Governing Law, Venue, and Jurisdiction.**  This Agreement will be governed by the laws of the State of Ohio, irrespective of the residence of the parties.  I agree to and hereby do submit to venue and jurisdiction solely before any state or federal court of record in Ohio, and I hereby waive any right to raise the questions of jurisdiction and venue in any action that the Company may bring.

DocuSigned by:
*Kevin Colón*

**Employee**

Date: 9/8/2025

Signed by:
*Seth Metcalf*

**Company**
By: Seth Metcalf
Title: General Partner
Date: 9/8/2025

## EXHIBIT 1 STATE AND OTHER SPECIFIC REQUIREMENTS ADDENDUM

### CALIFORNIA

For employees residing in California at the time of execution of this Agreement, Paragraphs 2.b, c & d and Paragraph 15 will not apply, and the following language is hereby incorporated into Paragraph 7.a:

Pursuant to California Labor Code Section 2870, employee's obligations to assign Intellectual Property do not extend to any which the employee created entirely on his/her own time without using any equipment, supplies, facilities or trade secret information of the Company which do not at the time of conception or reduction to practice of the invention relate to the Company's business or actual or demonstrably anticipated research or development of the Company.

### COLORADO

For employees residing in Colorado at the time of execution of this Agreement, Paragraph 2.b does not apply unless the employee who, at the time the covenant not to compete is entered and at the time it is enforced, earns an annualized amount equal to $127,091 as of 2025 (which is adjusted on a yearly basis).  Paragraph 2.c does not apply unless the employee who, at the time the covenant not to solicit is entered and at the time it is enforced, earns an annualized amount equal to $76,254 as of 2025 (which is adjusted on a yearly basis).

Employees in Colorado also receive the enclosed Notice with this Agreement.

### DISTRICT OF COLUMBIA

The District's Ban on Non-Compete Agreements Amendment Act of 2020 limits the use of non-compete agreements. It allows employers to request non-compete agreements from highly compensated employees, as that term is defined in the Ban on Non-Compete Agreements Amendment Act of 2020, under certain conditions. The Company has determined that you are a highly compensated employee. For more information about the Ban on Non-Compete Agreements Amendment Act of 2020, contact the District of Columbia Department of Employment Services (DOES).

For employees residing in the District of Columbia at the time of execution of this Agreement, Paragraphs 2.b and 2.d do not apply to employees earning less than $154,200 in 2024.  This amount may increase each calendar year in an amount equal to the Consumer Price Index for All Urban Consumers in the Washington Metropolitan Statistical Area adjusted to the nearest whole dollar.

### GEORGIA

For employees residing in Georgia at the time of execution of this Agreement, Paragraph 2.c shall apply in the United States, which the employee agrees is a reasonable geographic territory in which the Company does business.

## ILLINOIS

For employees residing in Illinois at the time of execution of this Agreement, Paragraph 2.b does not apply unless the employee's actual or expected annualized rate of earnings exceeds $75,000 per year (which statutorily increases every five years).  Paragraph 2.c does not apply unless the employee's actual or expected rate of earnings exceeds $45,000 per year (which statutorily increases every five years).

## LOUISIANA

For employees residing in Louisiana at the time of execution of this Agreement, Paragraphs 2.b and 2.c shall only apply to the following parishes: _____.

## MAINE

For employees residing in Maine at the time of execution of this Agreement, Paragraphs 2.b and 2.d do not take effect until 6 months after the date this Agreement was signed, or the employee has been employed with the Company for 12 months, whichever is later.

## MARYLAND

For employees residing in Maryland at the time of execution of this Agreement, Paragraph 2.b does not apply if the employee earns equal to or less than (a) $15 per hour; or (b) $31,200 annually.

## MASSACHUSETTS

For employees residing in Massachusetts at the time of execution of this Agreement, Paragraph 15 of this Agreement will not apply.  Further, if the Company chooses to enforce the non-competition provisions set forth in Paragraph 2.b, then the Company will continue to pay the Employee at least 50% of the Employee's highest annualized base salary paid by the Company to the Employee within the 2 years preceding the Employee's termination during the period described in Paragraph 2.b. The restriction set forth in Paragraph 2.b will not apply if the Employee is involuntarily terminated without cause.

## MINNESOTA

For employees residing in Minnesota at the time of execution of this Agreement, Paragraphs 2.b and 2.d will not apply.

## NEVADA

For employees residing in Nevada at the time of execution of this Agreement, Paragraph 2.b does not apply if the employee is paid solely on an hourly wage basis, exclusive of any tips or gratuities.

Docusign Envelope ID: E72568DF-D641-4780-A0B6-3C7BA75A4348

### NEW HAMPSHIRE

For employees residing in New Hampshire at the time of execution of this Agreement, Paragraph 2.b does not apply if the employee earns an hourly rate less than or equal to 200 percent of the federal minimum wage.

### NORTH DAKOTA

For employees residing in North Dakota at the time of execution of this Agreement, Paragraphs 2.b, c & d will not apply.

### OKLAHOMA

For employees residing in Oklahoma at the time of execution of this Agreement, Paragraphs 2.b & 2.d will not apply and 2.c(1) will only apply to the extent those Paragraphs prohibit the Employee from directly soliciting the sale of goods, services or a combination of goods and services from the established customers of the Company.

### OREGON

For employees residing in Oregon at the time of execution of this Agreement, the Company shall provide a copy of this Agreement to the employees at least two weeks before the employees begin work and must sign this Agreement as a condition of employment. The Company also must provide the employee a signed, written copy of the Agreement within 30 days after the date of termination of the employee's employment with the Company.  Paragraph 2.b shall only apply if the total amount of the employee's annual gross salary and commissions, calculated on an annual basis, at the time of the employee's termination exceeds $100,533, adjusted annually for inflation pursuant to the Consumer Price Index for All Urban Consumers, West Region (All Items), as published by the Bureau of Labor Statistics of the United States Department of Labor immediately preceding the calendar year of the employee's termination.

### VIRGINIA

For employees residing in Virginia at the time of execution of this Agreement, Paragraph 2.b does not apply if an employee whose average weekly earnings, calculated by dividing the employee's earnings during the period of 52 weeks immediately preceding the date of termination of employment by 52, or if an employee worked fewer than 52 weeks, by the number of weeks that the employee was actually paid during the 52-week period, are less than the average weekly wage of the Commonwealth as determined pursuant to subsection B of § 65.2-500.  Pursuant to § 65.2-500(B), the average wage in the Commonwealth shall be determined as follows: On or before January 1 of each year, the total wages, excluding wages of United States government employees, reported on contribution reports to the Virginia Employment Commission for the 12-month period ending the preceding June 30 shall be divided by the average monthly number of insured workers (determined by dividing the total insured workers reported for that 12-month period by 12). The average annual wage thus obtained shall be divided by 52 and the average weekly wage thus determined rounded to the nearest dollar.

## WASHINGTON

For employees residing in Washington at the time of execution of this Agreement, Paragraph 15 will not apply to this Agreement, and Paragraph 2(c)(1) shall apply only to the Company's current customers.  Further, if an employee is terminated as the result of a layoff, and the Company chooses to enforce the non-competition provisions set forth in Paragraph 2.b or Paragraph 2(c)(1) related to accepting business, then the Company will continue to pay the Employee's base salary for the duration of the period described in Paragraph 2.b, less any earnings the Employee has received from the Employee's then-current employer. Paragraph 2.b and Paragraph 2(c)(1) related to accepting business shall only apply if the employee's earnings, when annualized, exceed $100,000 per year, to be adjusted for inflation.

## WISCONSIN

For employees residing in Wisconsin, Paragraph 2.c shall apply in the United States, which the employee agrees is a reasonable geographic territory in which the Company does business.

## NO RESTRICTIONS ON RIGHT TO PRACTICE LAW

Paragraph 2 will not prohibit an employee from engaging in the practice of law, and will be interpreted to comply with the American Bar Association Model Rule 5.6 and/or any applicable state counterpart.