**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **OH.io Ventures Holding, Inc.,** | : | |
| | : | |
| **Plaintiff,** | : | Case No.: 2:26-cv-00566-EAS-KAJ |
| | : | |
| **v.** | : | |
| | : | Judge Edmund A. Sargus |
| **J. Seth Metcalf,** *et al.***,** | : | |
| | : | Magistrate Judge Kimberly A. Jolson |
| **Defendants.** | : | |
| | : | |

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND**
**<u>PRELIMINARY INJUNCTION</u>**

Plaintiff OH.io Ventures Holding, Inc. ("OH.io" or the "Company") respectfully requests that this Court issue a temporary restraining order and preliminary injunction: (a) immediately enjoining three of the individual Defendants J. Seth Metcalf ("Metcalf"), Jeff Schumann ("Schumann"), and Kevin Colón ("Colón " and collectively, "Defendants") and their counsel from reviewing any recordings and/or transcripts that contain, reflect, and/or constitute the Company's property; (b) order Defendants to account for all recordings and transcripts made during the course of their employment with the Company; (c) order Defendants to account for all recordings and transcripts they and/or their counsel have reviewed since their terminations; (d) order Defendants to account for any other Company property in their position; (e) order Defendants to return all such recordings, transcripts, or other Company property to the Company; (f) order Defendants to delete all copies of such recordings, transcripts, or other Company property, once such recordings, transcripts, and other Company property have been returned to Plaintiff and certify under oath they have complied with the order including the destruction of any copies; (g) award Plaintiff its reasonable attorney's fees for this Motion, and (h) grant such other and further relief as the Court

1

deems just and proper. The reasons for this Motion are explained further in the accompanying

memorandum, along with its attached exhibits.

Respectfully submitted,


*/s/ Anne E. Duprey*
Anne E. Duprey (0087798) – Trial Attorney
Aaron T. Brogdon (0081858)
Zackary L. Stillings (0098136)
FBT GIBBONS LLP
10 West Broad Street, Suite 2300
Columbus, OH  43215-3467
Ph.: (614) 559-7245; Fax: (614) 464-1737
E-mail: abrogdon@fbtgibbons.com
E-mail: aduprey@fbtgibbons.com
E-mail: zstillings@fbtgibbons.com

Jonathan Sack (*Seeking Pro Hac Vice Admission*)
Queenie Paniagua (*Seeking Pro Hac Vice Admission*)
SACK & SACK, LLP
70 East 55th St., 10th Floor
New York, NY 10022
Ph.: 212-702-9000; Fax: 212-702-9702
E-mail: jsack@sackandsack.com
E-mail: qpaniagua@sackandsack.com

*Counsel for Plaintiff OH.io Ventures Holding, Inc.*

2

## MEMORANDUM IN SUPPORT

This Motion is simple: Defendants have admitted to possessing confidential business information properly belonging to Plaintiff, asserting that because they tape-recorded such information, they are entitled to retain it. Plaintiff has demanded they cease reviewing such information and promptly return all of it, but Defendants have refused, despite both contractual and statutory obligations to do so. Plaintiff now asks the Court to order them to comply with those fundamental obligations.

Defendants are three former executives of Plaintiff OH.io, which terminated each of the three Defendants' at-will employment on April 13, 2026. [Compl., ¶¶ 104-109.] Each of the three Defendants received a termination letter requiring him to immediately return to the Company all Company property in his possession. Moreover, Defendant Jeff Schumann, the former CEO of the Company, also signed a Confidentiality, Non-Competition, Non-Solicitation and Inventions Assignment Agreement (the "CNNI") which independently requires him to return all "Confidential Information" to the Company. [Exh. C to Compl., § 2.1.] Likewise, Defendant Colón entered into an Agreement Regarding Competition and Protection of Proprietary Interests (the "CPPI Agreement"), which also independently requires him to return the Company's property to it following his employment.[1] [Exh. D to Compl., § 1.] To date, Defendants have refused to return all such property.

Specifically, counsel for Defendants have admitted to receiving, and reviewing, an unknown number of undisclosed electronic recordings and transcripts of conversations and meetings that Defendants made during the course of their employment, including meetings and communications with the Company's owner, management team, and other employees. [Compl., ¶

---

[1] Defendant Metcalf signed the CPPI Agreement on behalf of the Company.

3

136.] In fact, counsel for Defendants has stated that Defendants possess recordings of nearly *all* of their conversations from even before the inception of their employment with the Company, including Company meetings and phone calls with employees, board members, the Company's owner, and others. [Compl., ¶ 136.] Many of these recordings and transcripts are believed to have been made or recorded using Company-owned devices. [Compl., ¶ 137.]

Any and all such recordings and transcripts are the Company's property. The Court should grant this Motion, order Defendants to cease using them, and require their return along with a certification that Defendants have destroyed any other copies.

## I.    RELEVANT FACTS

### a.    Defendants Have Access to Company Confidential Information During The Course of Their Employment

OH.io is an AI-native performance venture platform founded with the mission of identifying up-and-coming AI enterprises from around the world and helping them scale their businesses in a way they would not be able to if acting on their own. [Compl., ¶ 45.] Defendants are three former executives of the Company. [Compl., ¶ 8.] During their employment, each Defendant was issued Company-owned equipment, including a laptop computer, and a Plaud AI device, which is capable of recording sound. [Compl., ¶ 72.]

As executives of the Company, each Defendant owed the Company fiduciary duties. [Compl., ¶¶ 1, 5, 240-250.]  Defendant Schumann had additional contractual obligations to the Company, by virtue of having signed the CNNI. [Exh. C to Compl.]

The CNNI required as follows:

> Upon the termination of Employee's affiliation with the Company for any reason or for no reason, or if the Company otherwise requests, (a) Employee *will return to the Company* all tangible Confidential Information and copies thereof (regardless how such Confidential Information or copies are maintained), and (b) Employee will deliver to the Company any property of the Company which may be in Employee's possession, including, but not limited to, notes, notebooks,

4

memoranda, reports, lists, records, specifications, software programs, data, graphics, computers, equipment, models, tools, cellular telephones, PDAs, pagers, credit and/or calling cards, keys, access cards, documentation or other materials of any nature and in any form, whether written, printed, electronic or in digital format or otherwise, relating to any matter within the scope of the business of the Company or concerning any of its dealings or affairs and any other Company property in Employee's possession, custody or control (whether prepared by Employee or others).

[Exh. C to Compl., § 2.1.] It further defined "Confidential Information" as:

[C]onfidential and proprietary information of the Company (including its subsidiaries, parents, affiliates, successors and assigns), whether in written, oral, electronic or other form, including but not limited to, information and facts concerning business plans, marketing plans, strategies, forecasts, customers, future customers, suppliers, licensors, licensees, partners, investors, affiliates or others, training methods and materials, financial information, pricing models and methods, sales prospects, client and partner lists, inventions, tests, test results, product assessments, improvements, products, designs, methods, show-how and know-how, techniques, systems, processes, software programs, algorithms, formulae, works of authorship, code, technical data and specifications, or any other technical or trade secrets of the Company or of any third party provided to Employee or the Company . . . The phrase, "trade secrets," as used in this Agreement, will be given its broadest possible interpretation under the law of the state of Ohio and the Defend Trade Secrets Act of 2016 ("DTSA") and will include, without limitation, anything tangible or intangible or electronically kept or stored, which constitutes, represents, evidences or records any secret scientific, technical, merchandising, production or management information, or any design, process, procedure, formula, invention, improvement or other confidential or proprietary information or documents.

[Exh. C to Compl., § 1.1.4.] Defendant Colón also had independent confidentiality obligations, which he agreed to in the CPPI Agreement, which was countersigned by Defendant Metcalf. [Exh. D to Compl., § 1.] The CPPI Agreement stated, in relevant part, as follows:

After termination of my employment, I will not use or disclose any Confidential Information for any purposes. Immediately upon my termination, I will return to the Company all tangible Confidential Information and copies thereof (regardless how such Confidential Information or copies are maintained), and I will deliver to the Company any property of the Company which may be in my possession, including, but not limited to, notes, notebooks, memoranda, reports, lists, records, specifications, software programs, data, graphics, computers, equipment, models, tools, cellular telephones, PDAs, pagers, credit and/or calling cards, keys, access cards, documentation or other materials of any nature and in any form, whether written, printed, electronic or in digital format or otherwise, relating to any matter

5

within the scope of the business of the Company or concerning any of its dealings or affairs and any other Company property in my possession, custody or control (whether prepared by myself or others).

[Exh. D to Compl., § 1.c.]

As executives of the Company, each Defendant was present for and participated in meetings during which confidential Company business was discussed, and was otherwise privy to Company confidential information. [*See* Compl., ¶ 204.] Defendants had access to the Company's confidential information and trade secrets by virtue of their senior roles within the Company and were entrusted with highly sensitive information regarding Company planning, operations, and strategy. [*See* Compl., ¶ 162.]

Following the termination of their employment, the Company learned that during the course of their employment, and in their capacities as employees of the Company, Defendants recorded almost all conversations and meetings they held with the Company's owner, management team, and other employees. [*See* Compl., ¶ 136.] While Defendants have not revealed or shared their contents, these recordings will certainly include highly sensitive and confidential Company information to which Defendants were only privy due to their senior roles within the Company. [*See* Compl., ¶¶ 162, 204.]

**b.      The Company Takes Steps to Protect its Confidential Information.**

As part of its normal business practices, the Company has instituted protections to ensure the confidentiality of its proprietary information and trade secrets. [*See* Compl., ¶¶ 148-168.] Of particular note, the Company limits the number of employees who have administrative access to its systems, and maintains policies and procedures governing the use, access, and protection of its confidential information and systems. [Compl., ¶ 152.] The Company also requires employees to enter into agreements imposing confidentiality agreements, such as the CNNI and the CPPI Agreement, and further implements technical, administrative, and physical safeguards designed to

prevent unauthorized access to, disclosure of, and use of its confidential information and trade secrets. [Compl., ¶ 155.]

By keeping its confidential information confidential, the Company gains a competitive advantage in the market, including by enabling the Company to make strategic decisions and develop and deploy its services in a manner not readily replicable by its competitors. [Compl., ¶ 160.] The Company does not disclose its confidential information and trade secrets outside the Company except under circumstances designed to maintain their secrecy. [Compl., ¶ 161.]

Defendants were aware of the Company's protections for its confidential information and understood that its protective measures were intended to protect the Company's confidential information and trade secrets. [Compl., ¶¶ 163-168.] Defendants' access to the Company's systems, applications, and data was limited to that necessary to perform their job duties and was subject to Company policies governing confidentiality and acceptable use. [Compl., ¶ 167.] By virtue of their roles, agreements, and access to Company systems and information, Defendants knew or reasonably should have known that the Company took reasonable measures to protect its confidential information and trade secrets and that such information was not to be used or disclosed outside the scope of their employment. [Compl., ¶ 168.]

### c.    Defendants are Terminated and File Suit

Defendants were each terminated for cause on April 13, 2026. [Compl., ¶¶ 107-09.] Each Defendant was instructed in his termination letter to immediately return all Company property in his possession. [Compl., ¶¶ 107-09.]

Defendants filed suit the day after their termination (the "Franklin County Action"), alleging breaches of their employment contracts, among other allegations. [Compl., ¶ 131.]

### d.    The Company Learns of the Recordings

Counsel for the parties met telephonically on May 6, 2026, to discuss the Franklin County Action. [Compl., ¶ 135.]  During that meeting, Defendants' counsel Abby Chin of the law firm Cooper Elliott stated that Defendants possess, are collecting, and are in the process of reviewing a significant volume and an unknown number of recordings of conversations made in the course of their employment as Company employees with the Company owner, management team, and other employees.  Defendant's counsel indicated that Defendants recorded nearly all of their conversations from even before the inception of their employment with the Company – including Company meetings and phone calls. [Compl., ¶ 136.] The Company believes many of the recordings were made through Company-owned Plaud devices and Company-owned Plaud subscriptions, as well as, subversively, on personal devices. [Compl., ¶ 137.]

The day after that conversation, the Company sent a demand letter to Defendants' counsel asserting that Defendants had improperly retained, accessed, and were continuing to use Company property and confidential information following termination, including but not limited to the recordings containing confidential company information and trade secrets, as well as other physical property. [Exh. A to Compl.]  Through counsel, the Company demanded the immediate return of all Company property, including the recordings. The Company further demanded that the former employees and their counsel immediately cease any review, access, copying, dissemination, or use of recordings or transcripts created during the course of their employment, including recordings of internal Company meetings and communications. [Compl., ¶¶ 138-40; Exh. A to Compl.]

### e.    Defendants Refuse the Company's Demand to Return Its Property

Defendants' counsel responded on May 8. [Exh. B to Compl.] With respect to recordings and transcripts, Defendants' counsel acknowledged that the former employees possessed

recordings and transcripts of meetings and conversations in which they participated. [Compl., ¶ 144.] Defendants' counsel declined the Company's demand that such recordings not be reviewed, stating that their clients would continue to review the recordings and share them with counsel. Defendants claimed the recordings are "not materially different than a person telling their counsel about a conversation they remember or a person reviewing their notes of a conversation or sharing them with counsel." [Exh. B to Compl.; Compl., ¶ 145.]

## II. STANDARD OF REVIEW

When ruling on a motion for a temporary restraining order ("TRO"), Federal Rule of Civil Procedure 65(b) requires courts to examine whether "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant" if a TRO is not granted. Fed. R. Civ. P. 65(b)(1)(A). In determining whether to grant a TRO, the Court considers four factors, including (1) the movant's likelihood of success on the merits; (2) whether the movant would likely be permanently harmed absent the injunction; (3) whether the injunction would cause substantial harm to third parties; and (4) whether the injunction would serve the public interest.[2] *S. Glazer's Distribs. of Ohio v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (citation omitted). While courts consider these as "factors to be balanced, not prerequisites to be met" the likelihood of success factor is of particular significance. *Id.* (citation omitted). Moreover, "to obtain injunctive relief, it is of paramount importance that the party establish immediacy and irreparability of injury." *Hartman v. Acton*, 613 F.Supp.3d 1015, 1022 (S.D.Ohio 2020) (Marbley, D.J.).

---

[2] These factors are the same as those for a preliminary injunction. *See Cretor Constr. Equip. LLC v. Gibson*, 738 F.Supp.3d 950, 959 (S.D. Ohio 2024).

### III. ARGUMENT

This Motion seeks targeted relief for a specific and ongoing harm: by their own admission, Defendants possess confidential business information in recordings and transcripts of meetings and conversations had in the course of their employment that contain, reflect, and/or constitute Plaintiff's confidential information and property. Plaintiff seeks an order requiring Defendants to account for and return all such recordings and transcripts, and requiring Defendants and their counsel to immediately cease any review of the same. Any and all such recordings are the Company's property. Whether under contract, statute, or duty, the result should be the same: they should be returned to the Company.

### a. OH.io is Likely to Succeed on the Merits of the Claims for which it Seeks Injunctive Relief.

OH.io brings this Motion based upon its claims for (i) Schumann's breach of Section 2.1 of the CNNI; (ii) Colón 's breach of Section 1 of the CPPI Agreement; (iii) Defendants' misappropriation of trade secrets under the DTSA and OUTSA; and (iv) conversion. [Compl., ¶¶ 169-181 (Count I); 182-198 (Count II); 199-207 (Count III); 208-214 (Count IV).] OH.io need only show a likelihood of success on one claim to be entitled to injunctive relief. *Planned Parenthood Great Nw., Haw., Alaska, Ind., & Ky., Inc. v. Cameron*, 599 F. Supp. 3d 497, 506 (W.D. Ky. 2022). OH.io can demonstrate that it is likely to succeed on all four.

### i. OH.io is Likely to Succeed on its Breach of Contract Claim Against Schumann.

OH.io is likely to succeed on its breach of contract claim against Schumann. Under Ohio law, to prove a breach of contract, a plaintiff must establish (1) "the existence of a contract," (2) "the failure without legal excuse of the other party to perform when performance is due" (i.e., a breach), and (3) "damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 41.

10

The CNNI contains express provisions requiring Schumann to "deliver to the Company[3] any property of the Company which may be in the Employee's possession including but not limited to … documentation or other materials *of any nature and in any form*, whether written, printed, electronic *or in digital format* or otherwise, relating to any matter within the scope of the business of the Company or concerning any of its dealings or affairs." [Exh. C to Compl., § 2.1(b).] Furthermore, the CNNI requires Schumann to "return to the Company all tangible Confidential Information and copies thereof." [Exh. C to Compl., § 2.1(a).] "Confidential Information" includes, whether in written, oral, electric, or other form, and without limitation:

> information and facts concerning business plans, marketing plans, strategies, forecasts, customers, future customers, suppliers, licensors, licensees, partners, investors, affiliates or others, training methods and materials, financial information, pricing models and methods, sales prospects, client and partner lists, inventions, tests, test results, product assessments, improvements, products, designs, methods, show-how and know-how, techniques, systems, processes, software programs, algorithms, formulae, works of authorship, code, technical data and specifications, or any other technical or trade secrets of the Company or of any third party provided to Employee or the Company . . . The phrase, "trade secrets," as used in this Agreement, will be given its broadest possible interpretation under the law of the state of Ohio and the Defend Trade Secrets Act of 2016 ("DTSA") and will include, without limitation, anything tangible or intangible or electronically kept or stored, which constitutes, represents, evidences or records any secret scientific, technical, merchandising, production or management information, or any design, process, procedure, formula, invention, improvement or other confidential or proprietary information or documents.

[Exh. C to Compl., § 1.1.4.]

Certainly, recordings of business meetings and conversations held in furtherance of the Company's business constitute confidential information which – by contract – Schumann *must* return. Nor may Schumann argue that he may keep copies of such recordings: he is contractually bound not only to return the Company's property, but "*copies thereof*." [Exh. C to Compl., § 2.1.]

---

[3] The CNNI defines the Company to be SaaS Innovation Labs ("SaaS"), the parent company of OH.io. For the purposes of this Motion, there is no distinction: neither SaaS nor OH.io have received the recordings at issue.

Courts routinely enforce contracts that require terminated employees to return information properly belonging to their former employers. *E.g., Mech. Constr. Managers, LLC v. Paschka,* 2022 WL 1591605, at \*7 (S.D. Ohio May 19, 2022) (granting employer's motion for TRO based on former employee's breach of employment agreement post-resignation by failing to return company documents and information); *Post-Browning, Inc. v. Knabe*, 2015 WL 5719580, at \*5 (S.D. Ohio Sept. 30, 2015) (granting employer's motion for TRO and ordering employee to return company property after former employee breached employment agreement by failing to return company property post-resignation); *SKF USA Inc. v. Zarwasch-Weiss*, No. 1:10-cv-1548, 2011 WL 13362617, at \*27 (N.D. Ohio Feb. 3, 2011) (requiring return of company information where employment agreement "prohibited [employee] from . . . copying records . . . and . . . required him . . . to return all documents, records, correspondence, and other items related to the business of the company upon termination.").

Nor may Schumann argue that such recordings are the functional equivalent of notes or memory. [*E.g.,* Exh. B to Compl.] As an initial matter, Defendants' contention that voluminous meeting recordings are the functional equivalent of a person's memory is not serious. For instance, Schumann certainly could not recite, verbatim, the contents of every conversation he had as OH.io's CEO or board members since beginning in the summer of 2025.

As for the argument that the recordings are the equivalent of him "reviewing [his] notes," that argument, too, is foreclosed by the CNNI. [Exh. B to Compl.] The CNNI states, in relevant part:

> Employee hereby assigns to the Company all . . . creations . . . documentation . . . [and] trade secrets . . . which the Employee may conceive, make, author, devise, discover, reduce to practice, or develop . . . while Employee is affiliated with the Company and which in any way relate to the Company's business.

12

[Exh. C to Compl., § 3.1.] That is, to the extent that the recordings constitute Schumann's creations, or constitute documentation he has made, Schumann has assigned any proprietary interest in them *to the Company*. And, Schumann *also* agreed that he would "keep and maintain adequate and current written records of all Inventions"[4] he made during his employment. [Exh. C to Compl., § 3.4.] Those records – at least based on Schumann's covenants in the CNNI – "will be available to and remain *the sole property of the Company at all times*." [Exh. C to Compl., § 3.4.]

There are thus numerous provisions of the CNNI that assign ownership rights in the recordings to the Company, and numerous provisions that require their return. There can be no serious argument that they are akin to Schumann's memory in the face of this language. The CNNI is clear: the recordings are Confidential Information belonging to the Company. They must be returned.

### ii.    OH.io is Likely to Succeed on its Breach of Contract Claim Against Colón.

For nearly identical reasons, OH.io is likely to succeed on its breach of contract claim against Colón. Colón entered into the CPPI Agreement with the Company, which represented a valid and enforceable contract. The Company fulfilled its obligations under the CPPI Agreement. To the extent he has not returned all of the Company's property to it, Colón has breached the CPPI Agreement.

The CPPI Agreement required him to return the Company's party upon his termination. [Exh. D to Compl., § 1.c.] To the extent any of the recordings and/or transcripts that Defendants'

---

[4] "Invention" has a broader meaning under the CNNI than it does in common parlance. Under the CNNI, "Invention" means "all inventions, ideas, discoveries, creations, manuscripts and properties, work modifications, processes, software programs, works of authorship, documentation, innovations, improvements, know how, show how inventions, designs, developments, apparatus, trade secrets, techniques, methods, technical specifications, technical data, concepts, expressions, and formulae. [Exh. C to Compl., § 3.1.]

counsel referenced constitute property that had been in Colón 's possession, such recordings and/or transcripts were required to have been returned upon his termination.

Like Schumann, the Court should require the return of any Company property in Colón 's possession pursuant to the CPPI Agreement's requirements. *E.g., PUI Audio, Inc. v. Van Den Broek,* 2021 WL 4905461, at \*8 (S.D. Ohio Oct. 21, 2021) (granting employer's motion for TRO and requiring former employee to return confidential information pursuant to employment agreement); *Minc, LLC v. Stebbins*, No. 22-CV-1655, 2024 WL 4041432, at \*12 (N.D. Ohio Sept. 4, 2024).

### iii. OH.io is likely to succeed on its DTSA and OUTSA claims.

Not only is OH.io likely to succeed on the merits of its Breach of Contract claim; it is also likely to succeed on its Defense of Trade Secrets Act ("DTSA") and Ohio Uniform Trade Secrets Act ("OUTSA") claims. The DTSA creates a cause of action for "[a]n owner of a trade secret that is misappropriated." 18 U.S.C. § 1836. OUTSA provides a parallel state-law claim. *See* O.R.C. § 1333.62(A). "Courts consider these state and federal law claims together because the definition and requirements of the OUTSA and DTSA are essentially the same." *Equity Resources, Inc. v. Thoman*, 682 F.Supp.3d 707, 726 (S.D. Ohio 2023).

Under the DTSA, a "trade secret" is information that the owner has taken "reasonable measures" to keep secret and that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). The OUTSA has a similar definition. *Equity Resources*, 682 F.Supp.3d at 726.

Under the OUTSA, a "trade secret" includes "any business information or plans, financial information, or listing of names, addresses, or telephone numbers." *James B. Oswald Co. v. Neate*, 98 F.4th 666, 675 (6th Cir. 2024) (citing Ohio Rev. Code § 1333.61(D)). The DTSA definition of

14

"trade secret" is similar, and likewise encompasses "financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing." *Id.* (citing 18 U.S.C. § 1839(3)). "[U]nder both statutes, the information must have independent economic value, and the company must take reasonable steps to keep it secret." *Id.*

Misappropriation of trade secrets under the DTSA and OUTSA includes any of the following: (1) acquisition of a trade secret by improper means, (2) unauthorized disclosure of a trade secret, or (3) unauthorized use of a trade secret. 18 U.S.C. § 1839(5); O.R.C. 1333.61(B). "Improper means" includes theft as well as "breach or inducement of a breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6)(A). Injunctive relief is available under the DTSA and OUTSA for both actual and threatened misappropriation. 18 U.S.C. § 1836(b)(3)(A)(i); *Avery Dennison Corp. v. Kitsonas*, 118 F.Supp.2d 848, 854 (S.D. Ohio 2000) (citing O.R.C. §1333.62(A)).

### 1. OH.io's Trade Secrets are protected under the DTSA and the OUTSA.

The recordings qualify as trade secrets under the DTSA and OUTSA. Counsel for Defendants has confirmed in writing that Defendants have "recordings and transcripts of numerous conversations," and confirmed orally that Defendants recorded nearly every conversation they had in the course of their employment from the time they began working onwards. [Compl., ¶ 136.] Taking counsel at their word, the recordings thus undoubtedly contain Company trade secrets under the definitions in both the OUTSA and the DTSA. Such voluminous recordings would certainly include recordings of company meetings pertaining to business strategy, customer

15

identity, potential customer identities, and financial planning – all of which are trade secrets under the DTSA and OUTSA.

Moreover, OH.io has taken reasonable steps to maintain the trade secrets' confidentiality, which further demonstrates that they are protectable. Those protections include, for example, documents such as the CNNI and the CPPI Agreement, which contractually require employees like Defendants to maintain information confidentiality. They include password protection and limiting access to specific files to specific persons. [Compl., ¶¶ 75, 149.] They include maintaining physical security measures at the Company's offices. [Compl., ¶ 153.] And they include the Company's demands – as it has done here – that terminated employees return all confidential information to the Company. [Compl., ¶¶ 107-09.]  Under the DTSA and the OUTSA, the recordings constitute trade secrets, and the Company has taken reasonable steps to maintain their confidentiality.

### 2. The Defendants misappropriated OH.io's Trade Secrets by improper means.

Following their termination, and despite repeated demands that Defendants return all company property, the Defendants breached their contractual and fiduciary duties to maintain the Company's secrecy by refusing to return the recordings. As described above, the recordings - which Defendants have represented to include almost all conversations held in the course of their employment – certainly include information concerning OH.io's business strategy, business plans, customer information, and financial planning. Moreover, Schumann and Colón were additionally bound by express contracts to return the recordings but did not. [Exh. C to Compl., § 2.1.]

### iv. OH.io is likely to succeed on its conversion claim.

In Ohio, "[a] conversion claim is recognized as any exercise of dominion or control wrongfully exerted over the personal property of another in denial of or under a claim inconsistent with his rights." *Equity Resources*, 682 F.Supp.3d at 720 (internal quotations removed). To prove

a conversion claim, a plaintiff must show "(1) the plaintiff had ownership or right of possession of the property at the time of conversion; (2) the defendant converted plaintiff's property by a wrongful act or disposition; and (3) resulting damages." *Id.*

Here, Defendants possess property – recordings, transcripts, and ostensibly any physical media on which such recordings reside – that belong to the Company. The Company has ownership or the right of possession to such items; defendants wrongfully hold that property; and the loss of the property has damaged and will continue to damage the Company.[5]

Thus, whether under the CNNI or the CPPI Agreement, the DTSA and/or OUTSA, or under the Company's conversion claim, the result should be the same: the Company has a substantial likelihood of success on the merits of those claims. This factor weighs in favor of granting the Company the injunctive relief it seeks.

### b. OH.io Will Suffer Irreparable Harm Absent Injunctive Relief.

In considering a motion for a temporary restraining order, the harm faced by a plaintiff is irreparable where it will not be compensable by money damages. *See Hartman*, 613 F.Supp.3d at 1024. The occurs where "the nature of the plaintiff's loss would make the damages difficult to calculate." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007) (citation omitted).

---

[5] The Company here acknowledges the caselaw indicating that conversion claims are sometimes preempted by claims under the trade secrets statutes. *See, e.g., Campfield v. Safelite Grp., Inc.*, 91 F.4th 401, 413-14 (6th Cir. 2024). "The test to determine whether a state law claim is displaced by OUTSA is to determine whether the claims are not more than a restatement of the same operative facts that formed the basis of the plaintiff's statutory claim for trade secret misappropriation." *Stolle Mach. Co., LLC v. Ram Precision Indus.*, 605 F.App'x 473, 486 (6th Cir. 2015) (citation omitted). Here, Plaintiff has pleaded a conversion claim, given the uncertain nature of the specific property here at issue. For example, to the extent there are any *physical* items that may accompany the information in the recordings, such physical property may require a separate framework than the information contained on or within it. In other words, to the extent that the recordings exist on physical media (for example, drives), or to the extent that the transcripts are on physical paper, such physical documents could properly be the subject of a conversion claim that would not be preempted by the OUTSA. "Where the state-law claim has a factual basis independent from the facts establishing the [OUTSA] claim, the portion of the claim supported by an independent factual basis survives preemption." *Campfield*, 91 F.4th 414.

Misappropriation, loss, and threatened disclosure of OH.io's trade secrets are, by themselves, presumed to be irreparable harm. *Allure Jewelers, Inc. v. Ulu*, 2012 WL 367719, *4 (S.D. Ohio Feb. 3, 2012). Additionally, "the Supreme Court of Ohio has held that injunctive relief is the 'appropriate remedy to restrain the continued and future use, or threatened use, of misappropriated trade secrets.'" *Union Home Mtge. Corp. v. Fratelli*, 2025 WL 639315, *17 (N.D. Ohio Feb. 27, 2025) (citing *Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.*, 492 N.E.2d 814, 819 (Ohio 1986)).

Because misappropriation of trade secrets is presumed to constitute irreparable harm, this factor, too, weighs in favor of granting an injunction.

### c.      An Injunction Will Not Cause Substantial Harm to Third Parties.

The third factor – whether there will be substantial harm should the relief be granted – also favors the Company. Although the substantial harm "factor is generally concerned with harm to third parties, courts also often consider the balance of hardships between the parties if an injunction were to issue." *Cameron*, 599 F. Supp. 3d at 508–09 (citation omitted). Substantial harm does not occur where a court enforces the terms of the parties' lawful agreements, or where a defendant is required only to return and cease inappropriate use of trade secrets or confidential information. *Mgt. Registry, Inc. v. Calvetti*, 2018 WL 1660087, *2 (W.D.Ky. Apr. 5, 2018). And, the injunction sought here would not be harmful to any third parties. This factor, again, favors an injunction.

### d.      The public interest favors injunctive relief.

The public interest factors also favor injunctive relief. The public has an interest in both "seeing valid contracts honored" and "discouraging unfair trade practices such as conversion of trade secrets." *Hoover Transp. Servs., Inc. v. Frye*, 77 F. App'x 776, 785 (6th Cir. 2003). Thus, all four factors favor granting the relief the Company seeks.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant this Motion, and enter an injunction in favor of Plaintiff OH.io Ventures Holding, Inc. Specifically, the Court should: (a) immediately enjoin Defendants and their counsel from reviewing any recordings and transcripts that contain, reflect, and/or constitute the Company's property; (b) order Defendants to account for all recordings and transcripts made during the course of their employment with the Company; (c) order Defendants to account for all recordings and transcripts they and/or their counsel have reviewed since their terminations; (d) order Defendants to account for any other Company property in their position; (e) order Defendants to return all such recordings, transcripts, or other Company property to the Company; (f) order Defendants to delete all copies of such recordings, transcripts, or other Company property, once such recordings, transcripts, and other Company property have been returned to Plaintiff and certify under oath they have complied with the order including the destruction of any copies; (g) award Plaintiff its reasonable attorney's fees for this Motion, and (h) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Anne E. Duprey*
Anne E. Duprey (0087798) – Trial Attorney
Aaron T. Brogdon (0081858)
Zackary L. Stillings (0098136)
FBT GIBBONS LLP
10 West Broad Street, Suite 2300
Columbus, OH  43215-3467
Ph.: (614) 559-7245; Fax: (614) 464-1737
E-mail: aduprey@fbtgibbons.com
E-mail: abrogdon@fbtgibbons.com
E-mail: zstillings@fbtgibbons.com

Jonathan Sack (*Seeking Pro Hac Vice Admission*)
Queenie Paniagua (*Seeking Pro Hac Vice Admission*)
SACK & SACK, LLP
70 East 55th St., 10th Floor

New York, NY 10022
Ph.: 212-702-9000; Fax: 212-702-9702
E-mail: jsack@sackandsack.com
E-mail: qpaniagua@sackandsack.com

*Counsel for Plaintiff OH.io Ventures Holding, Inc.*

0164635.0823882   4917-4645-3162v3

20

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on May 11, 2026, copies of the Complaint and this Motion for Temporary Restraining Order are being sent via email to the following attorneys, who represent Defendants Schumann, Metcalf, and Colon in a separate lawsuit in Franklin County, and have the ability to forward the Motion for Temporary Restraining Order to the Defendants and/or the counsel of Defendants' choosing if Defendants' are not represented by the following:

Rex H. Elliott (0054054)
Barton R. Keyes (0083979)
Abigail F. Chin (0097928)
Cooper Elliott
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 (fax)
rexe@cooperelliott.com
bartk@cooperelliott.com
abbyc@cooperelliott.com

*/s/ Anne E. Duprey*
Anne E. Duprey (0087798)

21