Exhibit 6

# Granola Platform Terms

Last updated: 19th December 2025

PLEASE READ THESE PLATFORM TERMS ("**PLATFORM TERMS**") CAREFULLY BEFORE USING THE SERVICES OFFERED BY GRANOLA, INC. AND/OR ONE OR MORE OF ITS AFFILIATES ("**GRANOLA**"). BY (1) MUTUALLY EXECUTING ONE OR MORE ORDER FORMS WITH GRANOLA WHICH REFERENCE TO THESE PLATFORM TERMS (EACH, AN "**ORDER FORM**"), (2) CLICKING A BOX INDICATING ACCEPTANCE OF THESE PLATFORM TERMS, OR (3) USING THE SERVICES, THE INDIVIDUAL OR THE INDIVIDUAL ON BEHALF OF AN ENTITY AND ITS AFFILIATES ("**CUSTOMER**") AGREES TO BE BOUND BY THESE PLATFORM TERMS WITH ALL ORDER FORMS (IF ANY) (TOGETHER THE "**AGREEMENT**") AND THAT SUCH AGREEMENT GOVERNS CUSTOMER'S ACQUISITION AND USE OF THE SERVICES PROVIDED UNDER THIS AGREEMENT. IN ADDITION, ANY ONLINE ORDER FORM WHICH YOU SUBMIT VIA GRANOLA'S STANDARD ONLINE PROCESS AND WHICH IS ACCEPTED BY GRANOLA SHALL BE DEEMED TO BE MUTUALLY EXECUTED. GRANOLA AND CUSTOMER (EACH A "**PARTY**" OR COLLECTIVELY THE "**PARTIES**") ENTER INTO THIS AGREEMENT AS OF THE EFFECTIVE DATE. IN ADDITION, ANY ONLINE ORDER FORM WHICH YOU SUBMIT VIA GRANOLA'S STANDARD ONLINE PROCESS AND WHICH IS ACCEPTED BY GRANOLA SHALL BE DEEMED TO BE MUTUALLY EXECUTED.

IN THE EVENT THAT CUSTOMER ACCESSES THE SERVICES THROUGH GRANOLA'S IOS APPLICATIONS AVAILABLE VIA THE APPLE, INC. APP STORE, THE ADDITIONAL APPLICATION TERMS AVAILABLE AT [HTTPS://GO.GRANOLA.SO/APPLICATION-TOS](HTTPS://GO.GRANOLA.SO/APPLICATION-TOS) (THE "**APPLICATION TERMS**") SHALL APPLY AND ARE HEREBY INCORPORATED BY REFERENCE. IF AN INDIVIDUAL IS USING THE SERVICES MERELY AS AN AUTHORIZED USER, THE INDIVIDUAL IS NOT THE CUSTOMER AND THE INDIVIDUAL'S USE OF THE SERVICES SHALL BE GOVERNED BY GRANOLA'S USER TERMS OF SERVICE (AVAILABLE AT [HTTPS://GO.GRANOLA.SO/USER-TOS](HTTPS://GO.GRANOLA.SO/USER-TOS)) RATHER THAN THESE PLATFORM TERMS.

1.     **Definitions**.

    1.1.     "**Affiliate**" means any entity that directly or indirectly controls, is controlled by, or is under common control with the subject entity. "**Control**" means direct or indirect ownership or control of more than fifty percent (50%) of the voting interests of the subject entity.

    1.2.     "**Authorized User**" means an individual permitted by Customer to use the Services subscribed by the Customer, in accordance with this Agreement.

    1.3.     "**Customer Data**" means information originating from Customer and entered or uploaded to the Services by Customer or its Authorized User. Customer Data does not include System Data.

    1.4.     "**Documentation**" means Granola's end user documentation relating to the Services provided in writing by or on behalf of Granola to Customer.

    1.5.     "**Effective Date**" means the date set forth in the Order Form, an individual clicking the box indicating acceptance of these Platform, or the individual using the Service if there is no Order Form and the individual has not clicked the box indicating acceptance.

    1.6.     "**Granola**" means Granola, Inc. and its Affiliates.

    1.7.     "**Granola IP**" means the Services and the Documentation, and any and all intellectual property provided to Customer or any Authorized User in connection with the foregoing. For the avoidance of doubt, Granola IP includes System Data, and any information, data, or other content derived from Granola's provision of the Services. For avoidance of doubt, Granola IP does not include Customer Data.

    1.8.     "**Harmful Code**" means any software, hardware, or other technology, device, or means, including any virus, worm, malware, or other malicious computer code, the purpose or effect of which is to permit unauthorized access to, or to destroy, disrupt, disable, distort, or otherwise harm or impede in any manner any (i) computer, software, firmware, hardware, system, or network; or (ii) any application or function of any of the foregoing or the security, integrity, confidentiality, or use of any data processed thereby.

    1.9.     "**Non-Granola Applications**" means any third-party service, connection, data, software, application, application programming interfaces (APIs), plug-ins, Third Party Models, or other technology products that are developed, owned, or licensed, by entities other than Granola, and that may interoperate or integrate with the Services provided by Granola.

    1.10.     "**Organizational Email**" means an email address provisioned by an individual or entity (e.g., common domain name for that email that is affiliated with the individual or entity) and is issued to other individuals.

    1.11.     "**Personal Data**" means any information provided by or on behalf of Customer relating to an identified or identifiable natural person that is processed by Granola in connection with the Services, and includes "personal data" as defined

1

under the GDPR and "personal information" as defined under the CCPA.

1.12.    "**Services**" means the Granola product(s) and/or service(s) specified in the applicable Order Form(s) and as made available by Granola to Customer from time to time, including underlying data made available through the product(s) and/or service(s).

1.12.1.**Basic Services**" are Services licensed to the Customer pursuant to a Basic subscription plan.

1.12.2. "**Business Services**" are Services licensed to the Customer pursuant to a Business subscription plan.

1.12.3. "**Enterprise Services**" are Services licensed to the Customer pursuant to an Enterprise subscription plan.

1.13.    "**Subscription Period**" means the term set forth in the Order Form or otherwise set forth in writing by Granola.

1.14.    "**System Data**" means all data, information, materials, content, and other intangible assets that are created, developed, collected, compiled, or otherwise obtained by Granola in connection with the operation, maintenance, or provision of the Services, including but not limited to: (a) system performance data, technical logs, and usage statistics; (b) analytics, metadata, and aggregated and de-identified data authorized to be derived from Customer Data, including Customer's or Authorized Users' interactions with the Services, which can in no way be linked specifically to Customer or an individual Authorized User and does not contain Confidential Information; and (c) any other data generated or acquired by Granola independent of the Customer's Confidential Information.

1.15.    "**Third Party Models**" means any artificial intelligence or machine learning algorithm, program or other model, including any large language model, developed or operated by a third-party, which is provided by Granola and used in connection with the Services.

1.16.    "**Workspace**" means a separated section of the Service where Authorized Users may store, access, use, modify, or share Customer Data with other Authorized Users.

2.    **Organizational Email; Account Information Disclosure**. Each Authorized User of a Customer account must have its own unique account associated with an email address, for accessing the Services. If Customer uses an Organizational Email for an Authorized User's account, Customer understands and agrees that information regarding the Organizational Email and account information, such as the identity of the Customer and/or the Authorized User are disclosable by Granola to the individual or entity that provisioned the Organizational Email.

3.    **Access and Use**.

3.1.    Access to the Services. Subject to Customer's compliance with this Agreement, Granola grants Customer a worldwide, non-exclusive, limited, non-sublicensable, non-transferable right for Authorized Users to access and use the Services during the Subscription Period, solely for Customer's internal business purposes, in accordance with the Documentation. Authorized User accounts may not be shared by multiple individuals, but may be reassigned when replacing an Authorized User. Customer will be responsible for all acts and omissions of its Authorized Users in connection with this Agreement and for all use of Authorized Users' accounts.

3.2.    Customer Systems. Customer is responsible for maintaining the security of its systems, accounts, and access credentials. Customer further will (a) be responsible for the accuracy, quality, integrity, reliability, appropriateness, intellectual property ownership, right to use, and legality of Customer Data, the means by which Customer acquired Customer Data, Customer's use of Customer Data with the Services, and the interoperation of any Non-Granola Applications with which Customer uses Services, (b) use commercially reasonable efforts to prevent unauthorized access to or use of Services, and notify Granola promptly of any such unauthorized access or use, (c) use Services only in accordance with this Agreement, Documentation, Order Forms and applicable laws and government regulations, and (d) comply with terms of service of any Non-Granola Applications with which Customer uses Services. Any use of the Services in breach of the foregoing by Customer or Authorized Users that in Granola's judgment threatens the security, integrity or availability of the Services, may result in Granola's immediate suspension of the Services, at Granola's sole discretion, subject to Granola using commercially reasonable efforts under the circumstances to provide Customer with notice and an opportunity to remedy such violation or threat prior to any such suspension.

3.3.    Workspace Administration.

3.3.1.    Administration. The Services include functionality whereby one or more designated Authorized Users can be designated by a Customer to serve as an administrator of a Workspace to manage and control that Workspace. Customer acknowledges and agrees that this account administration functionality will allow Customer to view, manage, and control, including removal of Authorized Users and access to Authorized User content, within such Workspace that the Customer's employees, agents, or contractors may have created or joined for their own purposes. Customer hereby acknowledges and agrees that Customer assumes all rights and obligations associated with that Workspace, including the obligation to pay Fees for any additional Authorized Users resulting from such claimed Workspace and any actions taken by or

2

for Customer relating to such Workspace.

3.3.2. <u>Other Workspaces</u>. Customer understands and agrees that when the Customer and its Authorized Users join another Workspace that is not the Customer's Workspace, the Customer acknowledges and agrees that (a) any content created, copied into, and/or shared in the unaffiliated Workspace will be able to be accessed, modified, deleted, and/or shared by the account owner of such unaffiliated Workspace, and (b) the Customer and its Authorized Users must comply with the policies and procedures of the account owner of the unaffiliated Workspace. For purposes of the unaffiliated Workspace, the Customer and its Authorized Users are a user of the unaffiliated Workspace pursuant to the <u>User Terms of Service</u>.

3.4. <u>Use Restrictions</u>. Customer shall not (and shall not permit any third-party to), directly or indirectly: (i) reverse engineer, decompile, disassemble, or otherwise attempt to discover the source code, object code, or underlying structure, ideas, know-how, data, or algorithms of the Services, or any software, documentation, Intellectual Property, or data associated with the Services (except to the extent applicable laws specifically prohibit such restriction); (ii) modify, translate, or create derivative works based on any software, documentation, Intellectual Property, or data associated, with the Services; (iii) sell, resell, copy, rent, license, lease, distribute, pledge, assign, sublicense, publish, or otherwise transfer or encumber rights to the Services, or include any Service in a service bureau or outsourcing offering; (iv) use the Services for the benefit of a third-party or make the Services available to any third-party; (v) remove or otherwise alter any proprietary notices or labels from the Services or any portion thereof; (vi) use the Services for purposes of building an application, service, or product that is competitive with any Granola product or service or has similar ideas, features, functions or graphics of the Service; or copying any ideas, features, functions, data, or graphics of the Service, or determining whether the Services are within the scope of any patent; (vii) access for purposes of monitoring availability, performance or functionality of the Services, or for any other benchmarking or competitive purposes; (v) use a Service to store or transmit infringing, libelous, or otherwise unlawful or tortious material, or to store or transmit material in violation of third-party rights, including privacy rights; (vi) use a Service to store or transmit Harmful Code; (vii) interfere with or disrupt the integrity or performance of any Service or data contained therein, (viii) attempt to gain unauthorized access to any Service or its related systems or networks; (ix) permit access to or use of any Services in a way that circumvents a contractual usage limit, or use any Services to access, copy or use any of Granola intellectual property except as permitted under this Agreement; (x) modify, copy, or create derivative works of a Service or any part, feature, function or user interface thereof; (xi) use or copy System Data except as permitted under this Agreement, (x) use the Service to store or transmit personal health information (as defined under the Health Insurance Portability and Accountability Act of 1996) unless agreed upon in writing by Granola; (xi) use the Service to store or transmit cardholder data (as defined under the Payment Card Industry's Data Security Standards); (xii) access or use the Services in any manner designed to circumvent the unique identity requirement for Authorized Users; (xiii) access or use the Services in any manner that temporarily and superficially reduces the number of Authorized Users in order to circumvent Services limitations; (xiv) access or use the Service from any country or region subject to a comprehensive U.S. embargo, including Cuba, Iran, North Korea, Syria, and the Crimea, so-called Donetsk People's Republic, and so-called Luhansk People's Republic regions of Ukraine; (xv) use the Services, including to store or transmit Customer Data, in a manner that violates Granola's use and content policy; (xvi) frame or mirror any part of any Service; and (xvii) use the Services for any activity where use or failure of the Services could lead to death, personal injury, or environmental damage, including life support systems, emergency services, nuclear facilities, autonomous vehicles, or air traffic control. Customer is responsible for all of Customer's activity in connection with the Services including, but not limited to, uploading Customer Data onto the Services. Customer (a) shall use the Services in compliance with all applicable laws, treaties and regulations in connection with Customer's use of the Services (including those related to data privacy, international communications, export laws and the transmission of technical or personal data laws which, for clarity, includes laws governing the monitoring or recording of conversations ("**Recording Laws**")); (b) shall not use, input, upload, transmit or otherwise provide any information or materials, including Customer Data, that contain, transmit, or activate any Harmful Code; and (c) shall not use the Services in a manner that violates any third-party intellectual property, contractual or other proprietary rights. If Granola reasonably suspects that Customer or Customer Data are in violation of the foregoing, Granola may investigate that violation and suspend or terminate Customer's access to the Services.

3.5. <u>Non-Granola Applications</u>. Customer acknowledges and agrees that the Services may operate on, with, or using Non-Granola Applications, including, without limitation, through integrations or connectors to such Non-Granola Applications. Non-Granola Applications are not provided, owned, controlled, or supported by Granola, and their availability or functionality may be subject to separate terms and conditions, privacy policies, and fees imposed by the third-party application provider. Granola is not responsible for the availability and operation of the Services solely to the extent such availability and operation is dependent on such Non-Granola Applications. Customer's access and use of Non-Granola Applications shall be exclusively governed by a separate agreement, including any applicable privacy agreements, with the provider of the Non-Granola Application. Customer is solely responsible for procuring any necessary rights for it to access Non-Granola Applications that Customer optionally integrates with the Services and, for all Non-Granola Applications, for complying with any applicable terms or conditions thereof. Any exchange of data or other interaction between Customer and a third-party provider of the Non-Granola Application is solely between Customer and such third-party provider and is governed by such third-party's terms and conditions.

3

3.6.     Removal of Data and Non-Granola Applications; Deletion of Account. If Customer receives notice, including from Granola, that data or a Non-Granola Application may no longer be used or must be removed, modified and/or disabled to avoid violating the Agreement, applicable law, or third-party rights, Customer will promptly do so. If Customer does not take required action, including deleting any data Customer may have downloaded from the Services, in accordance with the above, or if in Granola's judgment continued violation is likely to (re)occur, Granola may disable or delete access or use to the applicable data, Service and/or Non-Granola Application. If requested by Granola, Customer shall confirm deletion and discontinuance of use of such data and/or Non-Granola Application in writing and Granola shall be authorized to provide a copy of such confirmation to any such third-party claimant or governmental authority, as applicable. In addition, if Granola is required by any third-party rights holder to remove data, or receives information that data provided to Customer may violate the Agreement, applicable law or third-party rights, Granola may discontinue Customer's access to the data through the Services. Further, should Customer or any Authorized User become inactive in using the Service, including no longer paying for such Service, for more than thirty (30) days, Granola may delete the applicable account(s) and related data after using reasonable efforts to notify the Customer or Authorized User of its intent to do so.

3.7.     Suspension of Services and Acceleration. If any charge owing by Customer under this Agreement or any other agreement for Services is thirty (30) days or more overdue (or fifteen (15) or more days overdue in payment), Granola may, without limiting its other rights and remedies, accelerate Customer's unpaid Fee obligations under such agreements so that all such obligations become immediately due and payable, and suspend Services until such amounts are paid in full. Further, Granola may suspend Customer's access to the Services if (i) Customer's use of the Services poses a material security risk to the Services or other customers, or (ii) Customer's use of the Services may subject Granola to liability. Granola will use reasonable efforts to give Customer prior notice that its account is subject to suspension, in accordance with Section 12.5, "Notices" before suspending any Services. Granola further will reinstate Services as soon as the issue is determined by Granola to have been resolved. Granola will have no liability for any damage, liabilities, losses (including any loss of data or profits), or any other consequences that Customer or any Authorized User may incur as a result of a Services suspension.

**4.     Free Services.**

4.1.     General. Services provided to Customer without charge ("**Free Services**") include certain usage limits as described in the Documentation or otherwise communicated in writing to Customer by Granola. Usage over these limits requires Customer to purchase additional resources or services. Customer agrees that Granola, in its sole discretion and for any or no reason, may terminate Customer's access to Free Services or any part thereof at any time. Customer agrees that any termination of Customer's access to Free Services may be without prior notice, and Customer agrees that Granola will not be liable to Customer or any third-party for such termination. Customer is solely responsible for retrieving Customer Data from such Free Services, to the extent supported by the Free Services, prior to termination of Customer's access to such Services for any reason, provided that if Granola terminates Customer's account, except as required by law, Granola will provide Customer a reasonable opportunity to retrieve its Customer Data.

4.2.     FREE SERVICES DISCLAIMER. NOTWITHSTANDING ANYTHING SET FORTH HEREIN: (I) FREE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE" WITHOUT ANY WARRANTY OF ANY KIND; (II) GRANOLA SHALL HAVE NO LIABILITY OF ANY TYPE WITH RESPECT TO FREE SERVICES UNLESS SUCH EXCLUSION OF LIABILITY IS NOT ENFORCEABLE UNDER APPLICABLE LAW IN WHICH CASE GRANOLA'S LIABILITY WITH RESPECT TO FREE SERVICES SHALL NOT EXCEED $100.00;; AND (III) CUSTOMER SHALL BE FULLY LIABLE TO GRANOLA AND ITS AFFILIATES FOR ANY DAMAGES ARISING OUT OF CUSTOMER'S USE OF FREE SERVICES AND ANY BREACH BY CUSTOMER OF THIS AGREEMENT AND FOR ANY OF CUSTOMER'S INDEMNIFICATION OBLIGATIONS HEREUNDER. IN THE EVENT OF A CONFLICT BETWEEN THIS SECTION AND ANY OTHER PORTION OF THIS AGREEMENT, THIS SECTION SHALL CONTROL.

5.     **Granola Obligations**.

5.1.     Implementation. Upon payment of any applicable Fees, Granola will provide standard implementation assistance for the Services if and to the extent specified in such Order Form ("**Implementation Assistance**"). If additional services are requested, Granola will notify Customer in advance and obtain approval in writing before charging Customer Granola's then current hourly rates for such services.

5.2.     Service Updates. From time to time, Granola in its sole discretion may provide patches, enhancements, modifications, or fixes ("**Updates**"), which shall become part of the Services and subject to this Agreement; provided that Granola shall use commercially reasonable efforts to give Customer prior notice of any major changes that remove material functionality from the Services.

6.     **Proprietary Rights and Licenses; Restrictions**.

6.1.     Ownership; Reservation of Rights. Subject to the limited rights expressly granted to Customer by Granola hereunder, Granola and its licensors reserve all of their right, title and interest in and to the Services, System Data, Granola IP,

4

and related intellectual property. For avoidance of doubt, Granola may use System Data for any purpose, including improving, testing, training and operating Granola's products and services.

6.2.    Customer Data, Training, and Feedback.

6.2.1.  Granola will not sell Customer Data. Solely during the Subscription Period and solely for the Customer, Customer hereby grants to Granola a non-exclusive, royalty-free, worldwide right and license to access and use the Customer Data as necessary for Granola to provide the Services to Customer, including to (i) process Customer Data; (ii) monitor, maintain, and optimize the Services, (iii) manage the relationship between Customer and Granola; (iv) carry out Granola's core business operations, such as accounting, audits, tax preparation and for filing and compliance purposes; (v) monitor, investigate, prevent and detect fraud, security incidents and other misuse of the Services, and to prevent harm to Granola, Customer, and Granola's other customers; (vi) carry out identity verification purposes; and (vii) comply with applicable laws, rules, and regulations relating to the processing and retention of personal data to which Granola is subject.

6.2.2.  Granola further does not allow third parties to use Customer Data to train Third-Party Models. For Customers of Basic Services or Business Services, Customer Data may be used by Granola for the purposes described below unless the Customer affirmatively opts out through the applicable Service. For Customers of Enterprise Services, Customer Data may be used by Granola for the purposes described below only if the Customer affirmatively opts in through the applicable Service. Subject to the foregoing, Customer hereby grants to Granola a non-exclusive, royalty-free, worldwide, sublicensable, perpetual right and license to access and use Customer Data provided to Granola in connection with the Services to generate aggregated and de-identified data derived from Customer Data and use such data to improve, test, train, and operate Granola's products and services.

6.2.3.  Customer grants Granola a worldwide, perpetual, irrevocable, sublicensable, royalty-free license to use feedback and suggestions provided by Customer or Authorized Users, for the purpose of improving Granola's products or services.

7.      **Fees and Payment**.

7.1.    Fees. Customer will pay all fees specified in each Order Form or as otherwise set forth on https://www.granola.ai/pricing ("**Fees**"). Except as otherwise specified herein, (i) Fees are based on Services subscriptions purchased, including number of Authorized Users and not on actual usage, (ii) payment obligations are non-cancelable and Fees are due and payable upfront and payments are non-refundable, (iii) quantities of Authorized Users purchased cannot be decreased during the relevant Subscription Period, (iv) each additional user above the number of Authorized Users set forth in the Order Form shall be purchased by Customer at the amount set out in the Order form, and (v) each partial month of a Services subscription shall count as a whole month.

7.2.    Invoicing and Payment.  Customer will provide Granola with valid and updated financial (e.g., credit card, debit card, or ACH) information, or with a valid purchase order or alternative document reasonably acceptable to Granola. If Customer provides financial information to Granola, Customer authorizes Granola to charge such amounts set forth for the initial subscription term and any renewal subscription term(s) as set forth in Section 10.2 (the "Term of Subscriptions" section) below. Unless otherwise set forth, such charges shall be made in advance annually. If it is set forth that payment will be by a method other than a credit card, Granola will invoice Customer at signing or in advance of the renewal date and otherwise in accordance with the relevant Order Form or as otherwise set forth. Unless otherwise stated, invoiced Fees are due net thirty (30) days from the invoice date. Customer is responsible for providing complete and accurate billing and contact information to Granola and notifying Granola of any changes to such information. If the Subscription Period renews (in accordance with Section 10, "Term; Termination" below), such new Subscription Period shall include the additional fees for such additional Authorized Users and additional usages.

7.3.    Overdue Charges. If any invoiced amount is not received by Granola by the due date, then without limiting Granola's rights or remedies, (i) those charges may accrue at Granola's sole discretion late interest at the rate of 1.5% of the outstanding balance per month, or the maximum rate permitted by law, whichever is lower, and/or (ii) Granola may condition future subscription renewals and orders on payment terms shorter than those specified in Section 7.2, "Invoicing and Payment" above.

7.4.    Payment Disputes. If Customer believes in good faith that an invoice is disputed, Customer must notify Granola in writing of such disputed invoice within fifteen (15) days of receipt of such invoice, including with reasonable detail as to the dispute. The parties will work in good faith to resolve the dispute. Should parties fail to resolve the dispute within thirty (30) days of receipt of notice of dispute, parties may exercise all rights under the Agreement including arbitration. Customer will timely pay all undisputed amounts.

5

7.5.     Taxes. Fees are exclusive of applicable taxes, levies, duties or similar governmental assessments of any nature (collectively, "**Taxes**"). Customer is responsible for all such Taxes arising from its purchases hereunder, except taxes based on Granola's income, property and employees.

8.     **Confidential Information**.

8.1.     Confidential Information. From time to time during the Subscription Period, either Party may disclose or make available to the other Party information about its business affairs, products, confidential intellectual property, trade secrets, third-party confidential information, and other sensitive or proprietary information, whether orally or in written, electronic, or other form or media that: (i) is marked, designated or otherwise identified as "confidential" or something similar at the time of disclosure or within a reasonable period of time thereafter; or (ii) would be considered confidential by a reasonable person given the nature of the information or the circumstances of its disclosure (collectively, "**Confidential Information**"). Confidential Information of Granola includes the terms and conditions of this Agreement and all Order Forms (including pricing). Confidential Information does not include information that, at the time of disclosure is: (a) in the public domain; (b) known to the receiving Party at the time of disclosure; (c) rightfully obtained by the receiving Party on a non-confidential basis from a third-party; or (d) independently developed by the receiving Party without use of, reference to, or reliance upon the disclosing Party's Confidential Information.

8.2.     Duty. The receiving Party may use Confidential Information solely to perform its obligations or exercise its rights under this Agreement and will not disclose Confidential Information to any third-party, except to its employees, contractors, and agents who have a need to know and are bound by confidentiality obligations at least as protective as those set forth herein. The receiving Party is responsible for its representatives' compliance.

8.3.     Compelled Disclosure. Receiving Party may disclose Confidential Information to the limited extent required (i) in order to comply with the order of a court or other governmental body, or as otherwise necessary to comply with applicable law, provided that the Party making the disclosure pursuant to the order shall first have given written notice to the other Party and made a reasonable effort to obtain a protective order; or (ii) to establish a Party's rights under this Agreement, including to make required court filings.

8.4.     Effect of Termination or Expiration. Upon request by the disclosing Party or expiration or termination of the Agreement, the receiving Party shall promptly return to the disclosing Party all copies, whether in written, electronic, or other form or media, of the disclosing Party's Confidential Information, or destroy all such copies and certify in writing to the disclosing Party to the disclosing Party's reasonable satisfaction, that such Confidential Information has been destroyed. Each Party's obligations of non-use and non-disclosure with regard to Confidential Information are effective as of the Effective Date and will expire three (3) years from the date of termination or expiration of this Agreement; provided, however, with respect to any Confidential Information that constitutes a trade secret (as determined under applicable law), such obligations of non-disclosure will survive the termination or expiration of this Agreement until such Confidential Information is no longer considered a trade secret under applicable law through no wrongful act or omission of the receiving Party.

9.     **Data Security; Processing of Personal Data**.

9.1.     Security Measures. Granola will implement and maintain commercially reasonable administrative, technical, and physical safeguards to protect the security, confidentiality, and integrity of the Services and the Customer Data. Granola is not responsible for unauthorized access to Customer Data arising from Customer's acts or omissions, or those of its Authorized Users.

9.2.     Processing of Personal Data. Granola will process Personal Data in accordance with its policies and procedures, including its privacy policy, and applicable laws and regulations.

10.     **Term; Termination**.

10.1.     Term of Agreement. This Agreement commences on the Effective Date and continues until all subscriptions hereunder have expired or have been terminated, after which this Agreement shall automatically terminate without further action by either Party. Access to and use of the Service by Customer and its Authorized Users is permitted only during the applicable active Subscription Period(s) under one or more valid subscription plans.

10.2.     Term of Subscriptions. Unless otherwise set forth in the Order Form or as otherwise agreed to in writing by the Parties, each subscription continues for the Subscription Period and will automatically renew for successive one-year terms, provided that the applicable subscription remains active and neither Party has terminated it. Either Party may elect not to renew a subscription by giving the other written notice (email acceptable) at least thirty (30) days before the end of the then-current Subscription Period. Renewal fees will be at Granola's then-current rates, unless otherwise agreed in writing.

10.3.     Termination for Cause. A Party may terminate this Agreement or affected Order Form, at its discretion, for cause (a) upon thirty (30) days prior written notice to the other Party of a material breach if such breach remains uncured at the

6

expiration of such period, or (b) if the other Party becomes the subject of a petition in bankruptcy or any other proceeding relating to insolvency, receivership, liquidation or assignment for the benefit of creditors.

10.4.    Refund or Payment upon Termination. If this Agreement is terminated for cause by Customer in accordance with Section 10.3, "Termination for Cause" above, Granola will refund Customer any prepaid Fees covering the remainder of the term of applicable Order Form(s) terminated after the effective date of termination. If this Agreement is terminated by Granola in accordance with Section 10.3, "Termination for Cause" above, Customer will pay any unpaid Fees covering the remainder of the Subscription Term to the extent permitted by applicable law. In no event will termination relieve Customer of its obligation to pay any Fees payable to Granola for any period prior to the effective date of termination.

10.5.    Survival. The following provisions of this Agreement shall survive termination: Section 1, "Definitions"; Section 2, "Organizational Email; Account Information Disclosure"; Section 3, "Access and Use", except for Sections 3.1; Section 4, "Free Services"; Section 4.2 ("Free Services Disclaimer"); Section 6, "Proprietary Rights and Licenses; Restrictions"; Section 7, "Fees and Payment"; Section 8, "Confidential Information"; Section 10.4, "Refund or Payment upon Termination;" Section 10.5, "Survival"; Section 11, "Indemnification"; Section 12.1, "Mutual Representations"; Section 12.3, "Customer Warranties"; Section 12.4, "Disclaimers"; Section 13, "Limitation of Liability"; and Section 14, "General Provisions."

11.    **Indemnification**.

11.1.    Granola Indemnification. Granola will defend Customer against or settle any claim, demand, suit or proceeding made or brought against Customer by a third-party alleging that the Customer's use of the Services infringes or misappropriates such third-party's intellectual property rights (a **"Claim Against Customer"**), provided Customer (a) promptly gives Granola written notice of the Claim Against Customer, (b) gives Granola sole control of the defense and settlement of the Claim Against Customer (except that Granola may not settle any Claim Against Customer unless it unconditionally releases Customer of all liability), and (c) gives Granola all reasonable assistance, at Granola's expense. Granola may, at its sole discretion and expense, modify, replace, or discontinue any Services if Granola reasonably believes that the manufacture, use, sale, or other distribution of such Services may be, or is likely to be, enjoined as a result of a claim of infringement or misappropriation of any intellectual property right. Such modification or replacement shall be functionally and operationally equivalent to the original Services. If Granola determines that it cannot, on commercially reasonable terms, modify or replace the Services to avoid an injunction, Granola may cease providing the affected Services without liability other than refunding to Customer any prepaid amounts for the affected portion of the Services that will no longer be provided. The above obligations do not apply if a Claim Against Customer (i) does not state with specificity that the Services are the basis of the Claim Against Customer; (ii) arises from the use or combination of the Services or any part thereof with software, hardware, data, or processes not provided by Granola, if the Services or use would not infringe without such combination; (iii) arises from a Non-Granola Application, Customer inputs to the Service, outputs from Third Party Models, or Customer Data; or (iv) arises from Services under an Order Form for which there is no charge.

11.2.    Customer Indemnification. Customer will defend Granola against or settle any claim, demand, suit or proceeding made or brought against Granola by a third-party arising out of (a) the combination of a Non-Granola Application or configuration provided by Customer and used with the Services, infringes or misappropriates such third-party's intellectual property rights, (b) Customer's use of the Services in violation of the law, the Agreement, or the Documentation; (c) any Customer Data or Customer's use of Customer Data with the Services; or (d) a Non-Granola Application provided by Customer (each a **"Claim Against Granola"**), provided Granola (A) promptly gives Customer written notice of the Claim Against Granola, (B) gives Customer sole control of the defense and settlement of the Claim Against Granola (except that Customer may not settle any Claim Against Granola unless it unconditionally releases Granola of all liability), and (C) gives Customer all reasonable assistance, at Customer's expense.

11.3.    Exclusive Remedy. This Section 11, "Indemnification" states the indemnifying Party's sole liability to, and the indemnified Party's exclusive remedy against, the other Party for any third-party claim described in this section.

12.    **Representations, Warranties, Exclusive Remedies and Disclaimers**.

12.1.    Mutual Representations. Each Party represents that it has validly entered into this Agreement and has the legal power to do so.

12.2.    Granola Warranties. Granola warrants that during each Subscription Period (a) the Services will perform materially in accordance with the applicable Documentation, and (b) Granola will not materially decrease the overall functionality of the Services without prior written notice to the Customer. For any breach of a warranty above, Customer's exclusive remedies are those described in Section 10.3, "Termination" and Section 10.4, "Refund or Payment upon Termination" above.

12.3.    Customer Warranties. Customer represents and warrants that it (i) has all rights and/or consents necessary to provide the Customer Data to Granola as contemplated hereunder, in each case without any infringement, violation or misappropriation of any third-party rights (including, without limitation, intellectual property rights and rights of privacy) or (ii)

7

complies with all applicable laws, treaties and regulations (including Recording Laws) in connection with Customer's use of the Services. If the individual accepting this Agreement is accepting on behalf of an entity, such individual represents and warrants that the individual has the authority to bind such entity and its Affiliates to these terms and conditions, in which case the term "Customer" shall refer to such entity and its Affiliates. If the individual accepting this agreement does not have such authority, or does not agree with these terms and conditions, such individual must not accept this agreement and may not use the Services.

12.4. Disclaimers. EXCEPT AS EXPRESSLY SET FORTH HEREIN, THE SERVICES AND OUTPUT ARE PROVIDED "AS IS" AND "AS AVAILABLE" AND ARE WITHOUT WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF TITLE, NON-INFRINGEMENT, MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, AND ANY WARRANTIES IMPLIED BY ANY COURSE OF PERFORMANCE, USAGE OF TRADE, OR COURSE OF DEALING, ALL OF WHICH ARE EXPRESSLY DISCLAIMED. GRANOLA MAKES NO WARRANTY OF ANY KIND THAT THE SERVICES AND OUTPUT, OR ANY RESULTS OF THE USE THEREOF, WILL MEET CUSTOMER'S OR ANY OTHER PERSON'S REQUIREMENTS, OPERATE WITHOUT INTERRUPTION, ACHIEVE ANY INTENDED RESULT, BE COMPATIBLE OR WORK WITH ANY SOFTWARE, SYSTEM OR OTHER PLATFORM, OR BE SECURE, ACCURATE, COMPLETE, FREE OF HARMFUL CODE, OR ERROR FREE. FREE SERVICES ARE PROVIDED "AS IS" AND AS AVAILABLE EXCLUSIVE OF ANY WARRANTY WHATSOEVER. CUSTOMER ACKNOWLEDGES AND AGREES THAT ANY USE OF THE SERVICES IN CONNECTION WITH SENSITIVE DATA SHALL BE AT CUSTOMER'S SOLE RISK. DUE TO THE NATURE OF ARTIFICIAL INTELLIGENCE GENERALLY, CUSTOMER ACKNOWLEDGES THAT OUTPUTS OF THE SERVICE MAY CONTAIN ERRORS AND MISSTATEMENTS AND MAY BE INCOMPLETE OR INACCURATE. BEFORE USING ANY SUCH OUTPUTS, CUSTOMER OR ANY AUTHORIZED USER IS RESPONSIBLE FOR MAKING ITS OWN DETERMINATION THAT THE OUTPUTS ARE SUITABLE, AND CUSTOMER IS SOLELY RESPONSIBLE FOR ANY RELIANCE ON THE ACCURACY, COMPLETENESS, OR USEFULNESS OF ANY SUCH OUTPUTS.

13. **LIMITATION OF LIABILITY**.

13.1. IN NO EVENT WILL EITHER PARTY (INCLUDING ITS AFFILIATES) HAVE ANY LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT FOR ANY LOST PROFITS, REVENUES, GOODWILL, OR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, COVER, BUSINESS INTERRUPTION OR PUNITIVE DAMAGES, WHETHER AN ACTION IS IN CONTRACT OR TORT AND REGARDLESS OF THE THEORY OF LIABILITY, EVEN IF A PARTY OR ITS AFFILIATES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR IF A PARTY'S OR ITS AFFILIATES' REMEDY OTHERWISE FAILS OF ITS ESSENTIAL PURPOSE. THE FOREGOING DISCLAIMER WILL NOT APPLY TO THE EXTENT PROHIBITED BY LAW.

13.2. IN NO EVENT SHALL THE AGGREGATE LIABILITY OF EACH PARTY (INCLUDING ITS AFFILIATES) ARISING OUT OF THIS AGREEMENT EXCEED THE TOTAL AMOUNT PAID BY CUSTOMER HEREUNDER FOR THE SERVICES GIVING RISE TO THE LIABILITY IN THE TWELVE MONTHS PRECEDING THE FIRST INCIDENT OUT OF WHICH THE LIABILITY AROSE. THE FOREGOING LIMITATION WILL APPLY WHETHER AN ACTION IS IN CONTRACT OR TORT AND REGARDLESS OF THE THEORY OF LIABILITY, BUT WILL NOT LIMIT CUSTOMER'S PAYMENT OBLIGATIONS UNDER THE "FEES AND PAYMENT" SECTION ABOVE.

14. **General Provisions**.

14.1. Entire Agreement. This Agreement (represents the entire agreement between Customer and Granola with respect to the subject matter hereof and supersedes all prior or contemporaneous communications and proposals (whether oral, written or electronic) between Customer and Granola with respect thereto. The Parties agree that any term or condition stated in a Customer purchase order or in any other Customer order documentation (excluding an Order Form) is void. In the event of any conflict or inconsistency among the following documents, the order of precedence shall be: (1) the applicable Order Form, (2) the Platform Terms, (3) the Application Terms and (4) the Documentation. Titles and headings of sections of this Agreement are for convenience only and shall not affect the construction of any provision of this Agreement.

14.2. Modifications and Amendments. Except as otherwise provided herein, no modification or amendment of any provision of this Agreement shall be effective unless agreed by both parties in writing, and no waiver of any provision of this Agreement shall be effective unless in writing and signed by the waiving Party.

14.3. Severability. If any provision of this Agreement is held to be unenforceable for any reason, such provision shall be reformed only to the extent necessary to make it enforceable.

14.4. Notices. All notices, requests, consents, claims, demands, waivers, and other communications hereunder (each, a "**Notice**") to Granola shall be in writing and delivered by hand or by certified mail or overnight delivery service to:

Granola, Inc.
Attn: Legal Department
1151 Walker Road, Suite 417
Dover, Delaware 19904
With a copy to: hey@granola.so

8

*Granola, Inc. Confidential (December 2025)*

Except as otherwise specified in this Agreement, all Notices related to this Agreement will be in writing and will be effective upon (a) personal delivery, (b) the second business day after mailing, or (c), except for notices of termination or an indemnifiable claim ("**Legal Notices**"), which shall clearly be identifiable as Legal Notices, the day of sending by email. Billing-related Notices to Customer will be addressed to the relevant billing contact designated by Customer. All other notices to Customer will be addressed to the relevant Services system administrator designated by Customer.

14.5.    Export Regulation. The Services may utilize software and technology that may be subject to US export control laws, including the US Export Administration Act and its associated regulations. Customer shall not, directly or indirectly, export, re-export, or release the Services or the underlying software or technology to, or make the Services or the underlying software or technology accessible from, any jurisdiction or country to which export, re-export, or release is prohibited by law, rule, or regulation. Customer shall comply with all applicable laws, regulations, and rules, and complete all required undertakings (including obtaining any necessary export license or other governmental approval), prior to exporting, re-exporting, releasing, or otherwise making the Services or the underlying software or technology available outside the US.

14.6.    US Government Rights. Each of the Documentation and the software components that constitute the Services are a "commercial item" as that term is defined at 48 C.F.R. § 2.101, consisting of "commercial computer software" and "commercial computer software documentation" as such terms are used in 48 C.F.R. § 12.212. Accordingly, if Customer is an agency of the US Government or any contractor therefor, Customer only receives those rights with respect to the Services and Documentation as are granted to all other end users, in accordance with (a) 48 C.F.R. § 227.7201 through 48 C.F.R. § 227.7204, with respect to the Department of Defense and their contractors, or (b) 48 C.F.R. § 12.212, with respect to all other US Government users and their contractors.

14.7.    Assignment. Neither Party may assign any of its rights or obligations hereunder without the other Party's written consent, which shall not be unreasonably withheld; provided that (i) either Party may assign all of its rights and obligations hereunder without such consent to a successor-in-interest in connection with a sale of substantially all of such Party's business relating to this Agreement, provided the successor-in-interest of Customer is not a competitor of Granola or sells or licenses a product competitive with Granola's Services, and (ii) Granola may utilize subcontractors in the performance of its obligations hereunder.

14.8.    Publicity. Customer agrees that Granola may use Customer's name and logo to refer to Customer as a customer of Granola on its website and in marketing materials upon Customer's prior written consent.

14.9.    Relationship of the Parties. No agency, partnership, joint venture, or employment relationship is created as a result of this Agreement and neither Party has any authority of any kind to bind the other in any respect.

14.10.    Dispute Resolution and Arbitration Agreement. The parties shall use their best efforts to settle any dispute, claim, question, or disagreement arising out of or relating to the subject matter of these Agreement directly through good-faith negotiations, which shall be a precondition to either Party initiating arbitration. Except for intellectual property disputes, claims, questions, or disagreements, if such negotiations do not resolve the dispute it shall be finally settled by binding arbitration in San Francisco, California. The arbitration will proceed in the English language, in accordance with the JAMS Streamlined Arbitration Rules and Procedures (the "**Rules**") then in effect, by one commercial arbitrator with substantial experience in resolving intellectual property and commercial contract disputes. The arbitrator shall be selected from the appropriate list of JAMS arbitrators in accordance with such Rules. Judgment upon the award rendered by such arbitrator may be entered in any court of competent jurisdiction. The Rules will govern payment of all arbitration fees. Customer must include (i) its name and residence address, (ii) the email address and/or telephone number associated with its account, and (iii) a clear statement that it wants to opt out of this arbitration agreement. THE PARTIES WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR JURY. ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED OR LITIGATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS. CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.

14.11.    Injunctive Relief. Notwithstanding the foregoing obligation to arbitrate disputes, each Party shall have the right to pursue injunctive or other equitable relief at any time, from any court of competent jurisdiction, to prevent the actual or threatened infringement, misappropriation or violation of a Party's copyrights, trademarks, trade secrets, patents or other intellectual property rights.

14.12.    Governing Law and Venue. This Agreement will be governed by and construed in accordance with the laws of the State of California, excluding its body of law controlling conflict of laws. In the event the arbitration agreement does not apply, and the parties agree that any judicial proceeding (other than small claims actions) will be brought in the state or federal courts located in, respectively, San Francisco, California, or the federal district in which that county falls.

14.13.    Waiver. The failure of either Party to act with respect to a breach of this Agreement by the other Party shall not constitute a waiver and shall not limit such Party's rights with respect to such breach or any subsequent breaches.

*Granola, Inc. Confidential (December 2025)*

14.14.    <u>Force Majeure</u>. Except for payment obligations, neither Party shall be liable for any failure to perform its obligations hereunder where such failure results from any cause beyond such Party's reasonable control, including, without limitation, the elements; fire; flood; severe weather; earthquake; vandalism; accidents; sabotage; power failure; denial of service attacks or similar attacks; Internet failure; acts of God and the public enemy; acts of war; acts of terrorism; riots; civil or public disturbances; strikes lock-outs or labor disruptions; any laws, orders, rules, regulations, acts or restraints of any government or governmental body or authority, civil or military, including the orders and judgments of courts.

10

*Granola, Inc. Confidential (December 2025)*