**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**OH.IO VENTURES HOLDING, INC.,**

    **Plaintiff,**

    **v.**

**J. SETH METCALF, *et al.*,**

    **Defendants.**

                    **Case Number 2:26-cv-566**
                    **Judge Edmund A. Sargus, Jr.**
                    **Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

This matter is before the Court on Plaintiff OH.io Ventures Holding, Inc.'s Amended Motion for Temporary Restraining Order and Preliminary Injunction ("Amended Motion"). (ECF No. 26.) In accordance with this Court's June 3, 2026 Order, Defendants J. Seth Metcalf, Jeff Schumann, and Kevin Colón responded to the Amended Motion on June 8, 2026. (ECF Nos. 28, 31.) In the Court's June 3, 2026 Order, the Court stated that no reply was to be filed unless otherwise ordered. (ECF No. 28.) The Amended Motion for Temporary Restraining Order is now ripe for review.

The Court **DENIES IN PART** and **HOLDS IN ABEYANCE IN PART** the Amended Motion. (ECF No. 26.) This Opinion and Order addresses only the Amended Motion for Temporary Restraining Order, which is **DENIED**. The Amended Motion for Preliminary Injunction is **HELD IN ABEYANCE**. The Court will schedule a hearing on the Amended Motion for Preliminary Injunction after the parties meet and confer and advise the Court as ordered herein.

## BACKGROUND

This litigation—and related lawsuits pending in two other venues—is the result of a business venture gone awry. As adverse parties do, the parties here paint starkly different pictures of their dispute. In Plaintiff's version of the story, this case is about "three Defendants who teamed up in a long-planned scheme to engage in corporate theft, which was caught on the Company's own systems." (ECF No. 26, PageID 260.) Plaintiff claims Defendants "engaged in a coordinated effort to exfiltrate, retain, and in certain instances destroy Company data." (*Id.* PageID 262.) In Defendants' version of the story, this case is about Plaintiff "trying to destroy relevant, discoverable information." (ECF No. 31, PageID 947.) It is a tale of promises made, but not kept, to the three Defendants to induce them to join Plaintiff OH.io. (*Id.* PageID 949–50.)

### I.    The Alleged Facts

Plaintiff is an artificial intelligence ("AI")-native performance venture platform. (ECF No. 24, ¶ 27.) Its mission is to identify up-and-coming AI enterprises from around the world and help them scale their businesses in a way they would not be able to achieve on their own. (*Id.*) Ratmir Timashev is an entrepreneur and graduate of The Ohio State University. (*Id.* ¶ 65.) He initially funded Plaintiff OH.io. (*Id.*)

Defendants are former executives of Plaintiff. *See Schumann, et al. v. Timashev, et al.*, Franklin Cnty. C.P. No. 26CV003517 (filed April 14, 2026, Complaint ("State Complaint")); (ECF No. 31-1).[1] Defendant Schumann was the CEO and Co-Founder. (*Id.* ¶ 34.) Defendant

---

[1] This Court properly considers related complaints filed in other venues. Defendants attach those complaints to their response brief. (ECF Nos. 31-1, 31-3, 31-4.) The Court can also take judicial notice of proceedings in other courts of record. *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999); *Williams v. Warden, Summit Behav. Healthcare*, No. 2:23-cv-576, 2023 WL 2080353, at *6 n.4 (S.D. Ohio Feb. 17, 2023) (Vascura, M.J.) (citing *Lyons*), *report and recommendation adopted*, 2023 WL 2854837 (S.D. Ohio Apr. 10, 2023) (Morrison, J.); *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 n.2 (6th Cir. 2012) (same proposition).

Colón was a General Partner and Chief Revenue Officer. (*Id.* ¶ 67.) Defendant Metcalf was Treasurer, Secretary, and a General Partner. (*Id.* ¶ 55.)

### A. Plaintiff's Version of the Facts

From Plaintiff's perspective, Defendants schemed together to engage in corporate theft of company property. (*See generally* ECF Nos. 24, 26.) Defendants, as executives of the company, owed fiduciary duties to Plaintiff and had additional contractual obligations under employment agreements. (ECF No. 26, PageID 268–69.) For example, Defendant Schumann signed an employment agreement that required him to return to the company all confidential information and copies of confidential information, as well as all physical and electronic property. (*Id.* PageID 268; ECF No. 1-3.) Defendant Colón signed an employment agreement too, vowing not to use or disclosure confidential information, and to return all confidential information, physical property, and electronic property. (ECF No. 26, PageID 268–69; ECF No. 1-4.) Plaintiff alleges that as part of normal business practices, it has instituted protections to ensure the confidentiality of its proprietary information and trade secrets. (ECF No. 26, PageID 269–70; ECF No. 24, ¶¶ 178–93.)

Defendants were terminated on April 13, 2026. (ECF No. 26, PageID 270; ECF No. 24, ¶¶ 101–03.) Plaintiff asserts that in the days prior to and after being fired, Defendants exported and downloaded sensitive company information including "the owner's entire file of sent email, every email sent across the Company over a two-day span, financial reports, bank-account authorization documents, and insurance policies." (ECF No. 26, PageID 260.) Plaintiff also maintains that Defendant Schumann wiped his laptop clean within a half an hour of being fired. (*Id.*) Plaintiff states that Defendant Colón downloaded two draft Master Services Agreements after this litigation began, and Defendants have not returned an AI tool, referred to as "Atlas," or Atlas's outputs. (*Id.* PageID 260–61.)

Plaintiff states Defendants' production made on May 27, 2026, pursuant to this Court's Order (explained below in section II) indicates Defendants stole company property. (*Id.* PageID 261.) Plaintiff's internal review indicates that Defendants stole company property and discussed document destruction among themselves before their termination. (*Id.* PageID 263, 271–75.) Plaintiff argues that the breadth of data exported indicates Defendants "did not attempt to limit their conduct to discrete or arguably relevant materials but instead engaged in wholesale extraction of Company data." (*Id.* PageID 274.) Plaintiff argues that Defendants' deletion was selective and constitutes classic spoliation. (*Id.*)

## B. Defendants' Version of the Facts

For their part, Defendants explain that Mr. Timashev funded Plaintiff OH.io through Ratmir Timashev Revocable Trust (the "Trust") and Dutchess Management, LLC ("Dutchess"), the advisory firm that oversees and manages Mr. Timashev's and the Trust's finances. (ECF No. 31-1, ¶¶ 21–22; ECF No. 31, PageID 949.) Gordon Caplan serves on OH.io's Board and as Chief Executive Officer of Dutchess, and Joon Park is a Managing Director of Dutchess. (ECF No. 31-1, ¶¶ 24–25.)

Defendants were recruited to OH.io by Mr. Timashev, left behind former employers where they had hefty compensation and equity packages to join OH.io, and devoted their time, efforts, and talents to ensure OH.io met its goals. (*See generally* ECF No. 31-1.) Defendants allege in the State Complaint and argue here that Mr. Timashev represented in written and verbal communications that he would commit a $50 million fund to Plaintiff OH.io, attempt to raise an additional $50 million, and provide to Defendants carry-interest participation. (*Id.* ¶¶ 37, 50, 61.) Defendants argue they relied on those commitments and worked diligently to meet OH.io's goals but eventually learned that Mr. Timashev "never intended either to fund OH.io as promised or to issue Schumann, Colón, and Metcalf their promised carry interests." (*Id.* ¶¶ 68–72.) This led to

4

conversations between the parties, Defendants' ultimate termination, and the filing of the State Complaint. (*Id.* ¶¶ 73–80; ECF No. 31, PageID 951.)

Defendants say they have submitted documents and a privilege log in accordance with this Court's May 13 Order. (ECF No. 31, PageID 953.) Defendants also state they have returned all company items previously in their possession to Plaintiff or their counsel (who is awaiting instructions on how to return the property). (*Id.*) As for the allegations related to Mr. Timashev's inbox, Defendants state that "[a]lthough there was a download prior to terminations via Google vault using authorized OH.io credentials, that was on a work computer" and Defendants "have not seen anything from Timashev's inbox since termination." (ECF No. 31-5.)

In response to Plaintiff's assertion that Defendants have not returned the Atlas tool, Defendants state Atlas is an "AI-based personal productivity application" created by Defendant Schumann. (ECF No. 31, PageID 954.) Defendants assert Atlas is not company work product or a company application. (*Id.*) They also explain it is a desktop application that was authorized to Defendant Schumann and certain other employees, and Defendant Schumann cannot access data that employees other than himself authorized Atlas to access. (*Id.*) Defendants state that because Atlas ran as a local desktop application, they no longer have access to it upon termination and return of their company computers. (*Id.* PageID 955.)

## C. Litigation Pending in Other Courts

Since April 2026, the parties have filed four lawsuits in three venues, which complicates this Court's adjudication of this matter.

The first lawsuit between the parties was the State Complaint filed on April 14, 2026, by Defendants against Plaintiff and Mr. Timashev, Mr. Caplan, Mr. Park, Dutchess, the Trust, and SaaS Innovation Labs, LLC, which was to be Plaintiff's sole shareholder. (ECF No. 31-1.) The

5

State Complaint brings three counts for breach of contract and counts for fraud, civil conspiracy, promissory estoppel, unjust enrichment, and breach of fiduciary duty. (*Id.*)

Next, Plaintiff filed this federal lawsuit. Then, Defendants filed another lawsuit in the Franklin County Court of Common Pleas alleging that Plaintiff, Mr. Timashev, and others began publicly defaming Defendants during the months between this lawsuit and the State Complaint. *See Metcalf, et al. v. OH.io, et al.*, Franklin Cnty. C.P. No. 26CV004559 (filed May 13, 2026, Complaint); (ECF No. 31-3). The fourth suit was filed by Mr. Timashev against Defendants in the Superior Court of Connecticut at Stamford. There, he alleges that his privacy rights were violated when business meetings were recorded. *See Timashev v. Metcalf, et al.*, Superior Court of Connecticut at Stamford No. FSTCV265034315S (filed May 21, 2026, Complaint); (ECF No. 31-4).

## II.    Procedural Background

Plaintiff initiated this litigation on May 11, 2026, by filing a Complaint (ECF No. 1) and a Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 2). The Court held a Local Civil Rule 65.1 Conference on May 13, 2026, and issued an Order memorializing that conference. (ECF No. 9.) The Court's Order directed Defendants to make a production by May 27, 2026, and stated that by June 3, 2026, "the parties should meet and confer and file a joint status report as to whether further briefing and a hearing on Plaintiff OH.io Ventures Holding, Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction remain necessary." (*Id.* PageID 103.)

After the Court's May 13 Order, the parties filed a Joint Motion for a Protective Order, which the Court granted and signed. The Interim Protective Order states:

> 1. Until Defendants have made a full production and disclosure as required by the Court's May 13, 2026 Order (ECF No. 9) and Plaintiff has had an opportunity to review the produced records and log and petition the Court for any further

6

relief it may deem necessary, Defendants shall keep and maintain the confidentiality of the Disputed Materials and shall neither modify nor destroy any of the Disputed Materials nor any related information, including metadata.

2. Until the Court either dissolves this Interim Protective Order or enters a more comprehensive protective order, Defendants and their counsel shall not disclose any Disputed Materials to any persons other than the parties to this litigation, the parties' counsel, and the Court. Defendants and their counsel shall not use any Disputed Materials for any purpose other than this litigation, including but not limited to any business, commercial, or competitive purpose. Defendants and their counsel shall also take reasonable steps to ensure the confidentiality and security of any electronically stored information ("ESI") subject to this Order, and to ensure that such information cannot be accessed by any parties other than the parties to this action and their counsel and counsel's office staff. Notwithstanding any provisions of this Order to the contrary, this Order does not affect or restrict discovery or other proceedings in the case *Schumann, et al. v. Timashev, et al.*, Franklin County Common Pleas Case No. 26-CV-003517.

(ECF No. 13, PageID 121–22.) The Interim Protective Order is still the operative protective order. Plaintiff began reviewing information in its internal system, and Defendants began reviewing over 30,000 documents to prepare for the forthcoming production. (ECF No. 31, PageID 952; *see* ECF No. 23.)

Within two weeks, the parties emailed the Court, notifying the Court of disputes between them, and the Court held a status conference. (ECF Nos. 15, 19.) In the Order memorializing that conference, the Court set briefing schedules. (ECF No. 19.) The parties continue to brief those issues. Defendants produced all documents in accordance with the Court's May 13 Order.

A few days later, Plaintiff filed an Amended Complaint (ECF No. 24) and the Amended Motion (ECF No. 26). The Amended Complaint asserts the following causes of action and seeks injunctive relief on those counts: (1) breach of contract against Defendant Schumann; (2) breach of contract against Defendant Colón; (3) violations of the Defend Trade Secrets Act ("DTSA," 18 U.S.C. § 1831) and Ohio Uniform Trade Secrets Act ("OUTSA," Ohio Revised Code § 1333.61(D)) against all Defendants; and (4) conversion against all Defendants. (ECF No. 24,

PageID 223–31.) Plaintiff brings 10 other counts in the Amended Complaint but does not seek injunctive relief on those counts. (*Id.* PageID 231–48.)

Upon receipt of the Amended Motion, the Court set a briefing schedule, and the Amended Motion is now ripe for review. (ECF No. 28.) The relief Plaintiff seeks in connection with its request for a temporary restraining order ("TRO") is as follows:

1. Defendants shall immediately return to OH.io all Company property in their possession, custody, or control, including but not limited to Atlas, all components and materials necessary to access, operate, or use Atlas, all data stored by or within Atlas, and all OH.io documents, emails, recordings, transcripts, trade secrets, confidential information, and any copies thereof, whether maintained in written, electronic, digital, cloud-based, or other form;

2. Defendants shall immediately cease and desist from accessing, using, reviewing, copying, disclosing, transferring, syncing, operating, or otherwise exercising any control over OH.io's trade secrets, confidential information, Company property, or Atlas and any related data, inputs, outputs, or functionality;

3. Defendants shall preserve all materials relevant to this action, including all Company property, devices, accounts, repositories, applications, messages, metadata, logs, and communications in their possession, custody, or control, and shall be enjoined from deleting, altering, wiping, overwriting, factory-resetting, concealing, transferring, or destroying any such materials. Defendants shall also suspend any disappearing-message, auto-delete, or similar functionality on any application or platform used for communications relating in any way to OH.io;

4. Within a time period set by the Court, each Defendant shall provide a sworn declaration identifying all devices, accounts, applications, repositories, storage locations, cloud platforms, and third parties to whom any OH.io property, confidential information, trade secrets, recordings, transcripts, Atlas-related materials, or other Company data have been disclosed, transferred, synced, or maintained;

5. Defendants shall submit all identified personal devices, accounts, repositories, storage locations, and other sources reasonably believed to contain OH.io data to inspection and forensic imaging by a neutral third-party forensic examiner, and shall fully cooperate in that process, including by providing passwords, credentials, and access necessary to complete the examination;

6. Following the return of all Company property, each Defendant shall provide a sworn certification that he has returned all Company property and copies thereof, has ceased all access to and use of such materials, and does not retain any copies, whether directly or indirectly, except as preserved by the neutral forensic examiner or otherwise ordered by the Court;

7. After preservation and confirmation by the neutral forensic examiner, Defendants shall destroy any remaining Company property or copies thereof still in their possession, custody, or control, and certify such destruction under oath; and

8. Plaintiff shall be granted such other and further relief as the Court deems just and proper, including, to the extent permitted, an award of its attorney fees and costs incurred in bringing and enforcing this Motion.

(ECF No. 26, PageID 264–65.)

## STANDARD OF REVIEW

The purpose of a TRO "is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996); *Guerrero Sandoval ex rel. CDBG v. Bondi*, No. 2:25-cv-559, 2025 WL 1477059, at *2 (S.D. Ohio May 22, 2025) (quoting *Procter & Gamble Co.*). A TRO is meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Retail Serv. Sys., Inc. v. Am. Bedding Direct, LLC*, No. 2:26-cv-00383, 2026 WL 890408, at *2 (S.D. Ohio Apr. 1, 2026) (Marbley, J.) (citing *Dow Chem. Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979)).

Before granting a preliminary injunction or a TRO, a court considers four things: "(1) 'whether the movant has a strong likelihood of success on the merits' and would (2) 'suffer irreparable injury' without the injunction, (3) whether the injunction would substantially harm others, and (4) whether issuing the injunction serves the public interest." *James B. Oswald Co. v. Neate*, 98 F.4th 666, 672 (6th Cir. 2024) (quoting *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017)). "The standard for issuing a temporary

9

restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016) (Black, J.).

## ANALYSIS

Plaintiff explains that it filed its Amended Motion because it needed to seek broader relief than the relief initially presented in its opening Motion for Temporary Restraining Order and Preliminary Injunction, which was limited to recordings and transcripts. (ECF No. 26, PageID 276.) Plaintiff asserts that the Amended Motion is necessary because Plaintiff learned that Defendants engaged in the wholesale removal and continued retention of company data. (*Id.*)

Defendants argue that at its core, Plaintiff's Amended Motion is a motion for expedited discovery. (ECF No. 31, PageID 955.) Defendants point to the orders Plaintiff requests in its Amended Motion, including preservation of all materials relevant to this action, sworn declarations related to discovery compliance, and submission of personal devices for forensic review. (*Id.*) They argue that Plaintiff is not entitled to expedited discovery under Federal Rule of Civil Procedure 26 at this time, all materials should be preserved given the various lawsuits between the parties, and the parties should proceed with formal discovery. (*Id.*) For example, Defendants highlight that the information Plaintiff requests through sworn declarations could be obtained through interrogatories. (*Id.*) They also say that forensic imaging should be employed in limited circumstances, if at all, through normal discovery. (*Id.*)

Defendants also urge that Plaintiff has failed to demonstrate it is entitled to the extraordinary remedy that is injunctive relief. (*Id.* PageID 957.) Plaintiff is seeking to alter the

status quo, rather than preserve it. (*Id.*) The status quo has been preserved by the Interim Protective Order, says Defendants. (*Id.*; *see* ECF No. 13.)

## I.    Irreparable Harm

The Court begins its analysis with irreparable harm because "[t]o obtain temporary injunctive relief, it is of paramount importance that the party establish immediacy and irreparability of injury." *Hartman v. Acton*, 613 F. Supp. 3d 1015, 1022 (S.D. Ohio 2020) (Marbley, C.J.). Irreparable harm alleged must be "actual and imminent" not "speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006); *A&P Tech., Inc. v. Lariviere*, No. 1:17-cv-534, 2017 WL 6606961, at *6 (S.D. Ohio Dec. 27, 2017) (Black, J.).

Plaintiff asserts it is suffering irreparable harm because its harm is not compensable by money damages. (ECF No. 26, PageID 284.) Plaintiff also argues that "[m]isappropriation, loss, and threatened disclosure of OH.io's trade secrets are, by themselves, presumed to be irreparable harm." (*Id.*) Defendants respond that even assuming some of the information requires trade-secret protection (*see infra* section II.A), there is no threat to Plaintiff. (ECF No. 31, PageID 958.) Pursuant to their litigation obligations, Defendants have retained all potentially relevant information to all four lawsuits between the parties, produced a copy of that information to Plaintiff, and are not using any material for any purpose other than litigation as obligated under the Interim Protective Order. (*Id.*; *see* ECF No. 13.)

Plaintiff has not alleged or offered evidence of Defendants' misuse of information, public disclosure of information, or use of information for competitive purposes. *Fiorilli Constr. Co., Inc. v. Karlovec*, No. 1:26-cv-00426, 2026 WL 1346272, at *18 (N.D. Ohio May 14, 2026) ("[T]here must be some substantive support of a legitimate threat of disclosure in the facts of the case beyond the mere fact that a former employee has agreed to protect confidential information."). The Court agrees with Defendants that the Interim Protective Order is a sufficient

legal mechanism to preserve the status quo, particularly where there are three other litigation matters pending between the parties in two other venues, including one filed before this litigation.

To be sure, Plaintiff's requested relief acknowledges a mootness problem:

On May 27, 2026, Defendants produced back to Plaintiff *over 30,000 separate documents - over 62,000 pages of information - that they took from Plaintiff's servers*. Defendants gave this property back only in response to the Court's Interim Protective Order. . . . This Motion seeks to ensure it is all accounted for, returned, and protected.

(ECF No. 267, PageID 26.) The company property has been accounted for, returned, and protected under the Interim Protective Order. Any immediate, irreparable harm has been prevented through this temporary measure. If Plaintiff takes the position that the current Interim Protective Order is not expansive enough, the parties can meet and confer and submit a new protective order for the Court's consideration. If no agreement can be reached by the parties, Plaintiff may, only if justified, seek a Court order modifying the existing Interim Protective Order in this case.

The Court notes, however, that it does not opine on the ultimate issue of whether a preliminary or permanent injunction is necessary. The Court will be in a better position to assess that issue after discovery, a hearing, and submission of evidence at the hearing.

This factor—which is emphasized on a TRO application—weighs in Defendants' favor. *See Retail Serv. Sys.*, 2026 WL 890408, at *3 ("While a Court is permitted to consider other factors, immediacy, and irreparability of harm are threshold considerations since a TRO is an extraordinary remedy whose purpose is to preserve the status quo.").

## II. Strong Likelihood of Success on the Merits

Plaintiff asserts it is likely to succeed on each of its claims, and Defendants claim the opposite. The Court begins with the federal claim.

### A.  DTSA and OUTSA Claims

To state a claims for misappropriation of trade secrets under the DTSA, 18 U.S.C. §§ 1831–39, Plaintiff must show: "(1) the existence of a protectable trade secret; and (2) the misappropriation of the trade secret" by Defendants. *Int'l Petroleum Prods. & Additives Co. v. PXL Chems. BV*, No. 1:20-cv-00586, 2022 WL 4537974, at *12 (S.D. Ohio Sep. 28, 2022) (Marbley, C.J.). A trade secret is defined similarly under the DTSA and OUTSA: "it entails 'information' that the owner seeks to protect as confidential and that has economic value from not being publicized." *Id.* Courts consider DTSA and OUTSA claims together because the definition and requirements under the statutes are essentially the same. *Equity Res., Inc. v. Thoman*, 682 F. Supp. 3d 707, 726 (S.D. Ohio 2023). Misappropriation of trade secrets under the DTSA and OUTSA includes any of the following: (1) acquisition of a trade secret by improper means, (2) unauthorized disclosure of a trade secret, or (3) unauthorized use of a trade secret. 18 U.S.C. § 1839(5); Ohio Rev. Code § 1333.61(B).

Plaintiff maintains that Defendants have already "disclosed over 30,000 files they stole from the Company," referring to the documents Defendants have produced. (ECF No. 26, PageID 281.) Plaintiff highlights information pertaining to its "fund structure, operating plan, and budget." (*Id.*) Plaintiff says it maintained reasonable steps to ensure the confidentiality of the trade secrets. (*Id.* PageID 282.) Defendants "breached their contractual and fiduciary duties to maintain the Company's secrecy by refusing to return the recordings and other Company property until required to do so by Court order," Plaintiff says. (*Id.*) Plaintiff states Defendants still have document copies and Defendant Schumann has not returned Atlas. (*Id.*)

Defendants' response assumes arguendo that trade secret status exists but notes there will be questions of fact concerning what recordings, transcripts, or other documents are trade secrets. (ECF No. 31, PageID 960 n.8.) Defendants also point out that much of Plaintiff's argument in

13

support of these causes of action is based on an unverified Amended Complaint. (*Id.*) Still, Defendants urge that even assuming trade secret status and protections apply, downloading or retaining trade secret information while employed without evidence of unauthorized use, disclosure, or improper purpose is not misappropriation. (*Id.* PageID 960.) Defendants argue there is no threat of misappropriation here and Plaintiff's allegations are speculative. (*Id.* PageID 961.)

The parties' competing arguments make clear there are a myriad of factual issues that need to be sorted out through a full preliminary injunction hearing. While it appears Plaintiff has alleged that Defendants possessed or are in possession of Plaintiff's trade secrets, it is not clear which recordings, transcripts, or other documents are trade secrets. The unverified Amended Complaint and exhibits support Plaintiff's position that Defendants have trade secrets, so there is some likelihood of success on the merits. But, again, the Interim Protective Order protects Plaintiff from any disclosure while the various litigation matters are ongoing in different venues. That is the point of a TRO application—temporary protection—and Plaintiff already has it here.[2]

## B. Breach of Contract Claims

To state a claim for breach of contract under Ohio law, Plaintiff must show (1) the existence of a contract; (2) "the failure without legal excuse of the other party to perform when performance is due" (breach); and (3) damages or loss resulting from the breach. *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018).

---

[2] The parties both acknowledge that Plaintiff's conversion clam might be preempted by Plaintiff's DTSA and OUTSA claims. (ECF No. 26, PageID 283–84 n.9; ECF No. 31, PageID 961 n.9.) As a result, the Court finds a discussion of the likelihood of success on the merits of that claim is unnecessary and unhelpful for purposes of evaluating Plaintiff's TRO application. The Court refrains from opining on whether the conversion claim is preempted at this time.

Plaintiff argues the express language of Defendant Schumann's employment agreement requires him to return all company property in any form and copies thereof. (ECF No. 26, PageID 277.) Plaintiff contends and cites case law in support of the proposition that courts routinely require terminated employees to return information properly belonging to their former employers. (*Id.* PageID 278.) Plaintiff urges that Defendant Schumann's employment agreement requires him to return all copies of company property, including Atlas. (*Id.*) Plaintiff makes similar arguments with respect to Defendant Colón and his employment agreement, saying that to the extent Defendant Colón has not returned all company property, he has breached his employment agreement. (*Id.* PageID 279.)

Defendants answer by claiming that Plaintiff's position is a "nonstarter" because they have returned all copies of information and company devices. (ECF No. 31, PageID 961.) They also state that although Defendant Schumann disputes Atlas is company property, Plaintiff is in possession of the Atlas application, too. (*Id.*)

Again, based on Plaintiff's allegation in the Amended Complaint, Plaintiff may be successful on the merits of this claim. That assessment does not, though, change the Court's opinion that any irreparable harm has been prevented through the Interim Protective Order.

While this factor weighs in Plaintiff's favor, the Court gives it less weight on the facts of this TRO application.

### III.     Substantial Harm to Others

The substantial harm factor is used to balance the equities. The harm Plaintiff will suffer in the absence of an injunction is balanced against the harm Defendants will suffer if the injunction is granted. *Cretor Constr. Equip. LLC v. Gibson*, 738 F. Supp. 3d 950, 971 (S.D. Ohio 2024) (Cole, J.)*.* Courts also assess the impact injunctive relief might have on relevant third parties. *Id.*

15

Plaintiff argues this factor weighs in its favor because substantial harm does not result from a court enforcing the terms of the parties' agreement and an injunction in this case would not harm any third parties. (ECF No. 26, PageID 285.) Defendants retort that Plaintiff's request is related to discovery, and they should not be precluded from engaging in the normal discovery process. (ECF No. 31, PageID 959.) Defendants also contend that a destruction order is an extraordinary remedy where information is potentially relevant to other lawsuits pending between the parties—and Defendants say the information at issue here is particularly relevant to the first-filed state court action. (*Id.*)

The Interim Protective Order obviates any immediate harm Plaintiff may suffer. And Defendants have articulated why early declarations or forensic imaging of their "personal devices, accounts, repositories, storage locations, and other sources" outside the normal course of discovery (even expedited discovery) could be harmful to Defendants. The destruction of documents is inappropriate given it would be hastily ordered without appropriate examination, and those documents are potentially relevant to other lawsuits. This factor weighs in Defendants' favor.

## IV.    Public Interest

Plaintiff states that the public interest factor weighs in its favor because the public has an interest in seeing that contracts are honored and that the conversion of trade secrets is discouraged. (ECF No. 26, PageID 285.) Defendants argue that Plaintiff has not shown the use of any confidential information or submitted evidence establishing substantial likelihood of success, and granting the extraordinary remedy of preliminary injunctive relief based on speculation would not serve the public interest. (ECF No. 31, PageID 961–62.)

16

The Court finds this factor to be neutral on this TRO application. Both parties make valid arguments, but this factor is less compelling than others, such as irreparable harm, when the Court is considering imposing immediate and hasty relief without an evidentiary hearing.

* * * * *

To sum, the first factor, irreparable harm (the most important factor), weighs in Defendants' favor. The second factor, likelihood of success on the merits, weighs slightly in Plaintiff's favor. The third factor, substantial harm to others, weighs in Defendants' favor. The fourth factor, public interest, is neutral. On balance, the factors counsel that Plaintiff's TRO application should be denied. The Court cautions, however, this is in large part because of the Interim Protective Order. The Court will not overlook Defendants' actions if Plaintiff's allegations are supported by substantial evidence at a later stage in this litigation.

**CONCLUSION**

The Court **DENIES IN PART** and **HOLDS IN ABEYANCE IN PART** (ECF No. 26) Plaintiff OH.io Ventures Holding, Inc.'s Amended Motion for Temporary Restraining Order and Preliminary Injunction. The Amended Motion for Temporary Restraining Order is **DENIED**, but the Amended Motion for Preliminary Injunction is **HELD IN ABEYANCE**. The Court will schedule a hearing on the Amended Motion for Preliminary Injunction.

The parties are **ORDERED** to meet and confer and file a notice on the Court's docket **within seven days of the date of this Order** proposing (1) an approximate calendar week by which they will be ready for a Preliminary Injunction Hearing and (2) a rough estimate of how long they anticipate the Hearing will last. The parties must also meet and confer **within seven days of the date of this Order** regarding discovery deadlines on Plaintiff's Amended Motion for

17

Preliminary Injunction. The parties must then file a joint motion and proposed order containing a proposed discovery schedule for the Court's consideration.

Plaintiff OH.io Ventures Holding, Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 2) is **DENIED AS MOOT**.

This case remains open.

**IT IS SO ORDERED.**

 6/12/2026                                          s/Edmund A. Sargus, Jr.
**DATE**                                          **EDMUND A. SARGUS, JR.**
                                                 **UNITED STATES DISTRICT JUDGE**